[No. A060416. First Dist., Div. Four. Aug. 8, 1994.]

HERBERT A. CROCKER & COMPANY et al., Plaintiffs and Appellants,
v.
TRANSAMERICA TITLE INSURANCE COMPANY et al., Defendants
and Respondents.

**COUNSEL**

Mark B. Scott for Plaintiffs and Appellants.

Knox, Anderson & Blake, Robert Knox, Kevin Anderson, Tobin & Tobin, Martin H. Orlick and Terry J. Mollica for Defendants and Respondents.

## OPINION

**POCHÉ, Acting P. J.**—Plaintiffs Herbert A. Crocker & Company (Crocker) and William H. McDevitt (McDevitt) appeal from an adverse judgment in their action against defendants Transamerica Title Insurance Company (Transamerica) and First American Title Insurance Company (First American Title) following the granting of individual motions for summary adjudication on plaintiffs' cause of action for abstractor's negligence. At issue on appeal is whether the trial court properly determined that plaintiffs' action was barred by the two-year statute of limitations for actions for abstractor's negligence (Code Civ. Proc., § 339, subd. 1).[1] Finding no error in the trial court's conclusion we affirm.

### THE FACTS

This case concerns a piece of partially developed real property located at 507 Francisco Boulevard in San Rafael on which presently sits a restaurant known as Dominic's. In order to understand the dispute between the parties, some history is required.

Upon its admission to the United States of America in 1850, the State of California assumed title to all tidelands and submerged lands within its boundaries to be held in trust for public purposes of navigation, commerce, and fisheries. (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 482 [91 Cal.Rptr. 23, 476 P.2d 423].) Prior to 1870 the San Rafael Creek was a natural waterway extending from the City of San Rafael (City) to the San Francisco Bay. As a result of extensive dredging, relocation, and realignment of portions of the waterway a new navigatable waterway was created. In 1870 the Board of Tide Lands Commissioners commissioned George Allardt to survey the channel within the San Rafael Creek. The channel itself (sometimes referred to as "Allardt's San Rafael Canal") was reserved in perpetuity from sale to private individuals but the lots adjoining the canal were surveyed, numbered and depicted on a map dated May 10, 1871,[2] and were eventually sold.

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise specified.

[2]The lots are depicted on "Map No. 2 of Salt Marsh and Tidelands Situate[d] in the County of Marin, State of California."

At various times after 1870 the San Rafael Creek was dredged and straightened which resulted in bypassing of portions of the canal by the present waterway.

In 1923 the City received a legislative grant of all tidelands and submerged lands (filled or unfilled) within the City. The City thus became responsible for protecting the tidelands and submerged lands which could not be conveyed into private ownership. In 1971 the City's trust powers were amended to permit the City to convey or exchange, subject to the approval of the California State Lands Commission, certain filled lands which were deemed to be no longer useful or susceptible of use for harbors, commerce, fisheries or navigation. (Stats. 1971, ch. 1742, § 1, pp. 3717-3718.)

On October 9, 1957, plaintiff Crocker acquired an undivided one-third interest in the real property that is the subject of the instant dispute. At one time the former Allardt's San Rafael Canal crossed that property. In connection with that acquisition, Marin Title Guaranty Company (Marin Title) issued a preliminary report on the property, and City Title Insurance Company issued a title insurance policy with a face value of $40,000. Neither the title insurance policy nor the preliminary report disclosed the existence of the public trust. Eventually, defendant Transamerica succeeded to the interests of the escrow company, Marin Title, and of the title policy obligations of City Title Insurance Company. The complaint also alleges, but defendant First American Title disputes, that First American Title was also a successor in interest to the obligations of Marin Title.

Crocker acquired the remaining two-thirds interest in the property on January 19, 1960. On August 5th of that year, Crocker conveyed an undivided one-half interest in the property to plaintiff McDevitt.

In September of 1969 Marin Title prepared a preliminary report in conjunction with a refinancing of the property. That report disclosed for the first time[3] the existence of the public trust in these terms: "Possible interest of the City of San Rafael by virtue of the Legislative Grant from the State of California (Statutes of 1923, Chapter 83, page 158 and amended by Statutes of 1967, Chapter 178, page 1276) subject to the conditions, restrictions and

---

[3]After 1957 Marin Title issued a number of other preliminary reports on the property in conjunction with refinancing transactions. None of these reports listed the public trust easement: a December 24, 1959, report, a January 20, 1960, report, an October 27, 1960, report, and a November 15, 1962, report.

limitations an[d] the rights, powers, duties and trusts contained in such grant and such rights and interest as may be possessed by the State of California under said Grant or by law. [¶] Affects that portion of the herein described property lying within the San Rafael Canal as said Canal is shown upon Map No. 2 Salt Marsh and Tide Lands situated in the County of Marin or within the lines of the San Rafael Creek as the same come [*sic*] to rest from natural causes."

On or about January 8, 1970, Crocker and McDevitt wrote to Marin Title asserting, "Your recent report on the above property discloses a 'possible interest' under item 8 which was never revealed in any of the previous title policies and reports on this property. [¶] We feel it is advisable to go on record notifying you that the disclosure that the property is subject to this 'possible interest' at this late date could be extremely damaging to us." Neither plaintiff could recall whether any response to that letter was received. They took no further action with respect to the preliminary report.

In 1971 the Governor signed Assembly Bill No. 2111 which directed the City to resurvey Allardt's Canal. (Stats. 1971, ch. 1742, § 3, p. 3720.) The act also authorized the City to enter into settlements with private landowners with respect to those portions of the canal and the San Rafael Creek lying above the mean high tide line, under stated conditions and with the approval of the California State Lands Commission. (*Id.*, §§ 4-8, pp. 3720-3722.)

According to the allegations of the complaint, plaintiffs were approached by a developer and the City Redevelopment Agency in November of 1988 regarding the development of an adjacent parcel. During this process plaintiffs were advised by the California State Lands Commission that the state and the city were claiming title to a fee portion of this property as a result of a public trust easement; that plaintiffs would have to purchase a release of the government's fee interest before participating in the development of the neighboring parcel; that until plaintiffs removed the government's fee interest they could not obtain permits to improve their property, including the restaurant; that in order to remove the government's fee interest, plaintiffs would have to convey to the City that portion of the property located on the waterfront, and to agree to maintain for the City that conveyed property, to provide public access to the waterfront, and to make other concessions. Plaintiffs allege that as a result of the "assertion of the Government's Fee Interest" and the demand by the California State Lands Commission and the City's redevelopment agency, the value of the property has been diminished by $475,000.

Around December 27, 1988, counsel for plaintiffs filed a claim on the title insurance policy with Transamerica on the effect of the public trust easement on the real property.[4] Almost a year later on December 21, 1989, plaintiffs commenced the instant suit against Transamerica, setting forth causes of action for declaratory relief, breach of contract, breach of the covenant of good faith and fair dealing, and negligence. Subsequently plaintiffs filed a second amended complaint, including First American Title as a defendant on the cause of action for abstractor's negligence.

In their cause of action for abstractor's negligence plaintiffs alleged that "defendants" were negligent in searching the record and in failing to discover the government's fee interest in the property and in failing to disclose it in the preliminary reports issued in 1957, 1959, 1960, and 1962 (see fn. 3, *ante*). Plaintiffs alleged that as a consequence of that omission the value of the property had been diminished and they had been damaged "to the extent that the Government's fee interest is a cloud on the [title of the] property."

Defendants separately moved for summary judgment on the fourth cause of action asserting as an absolute defense that the action was barred by the two-year statute of limitations for abstractor's negligence (§§ 339, subd. 1, 437c, subd. (f)). The trial court agreed, and granted each summary adjudication of the issue in each of their favor. This appeal followed.[5]

## REVIEW

▮▮ ▬ ▮▮ ▮▮ The dispute in this case centers on the date plaintiffs' cause of action for abstractor's negligence[6] accrued. The touchstone is

---

[4] In January of 1990 Transamerica exercised its option under the title insurance policy and tendered to plaintiff Crocker the sum of $40,000. Thereafter, Transamerica also tendered Crocker the additional sum of $24,032.76 to compensate him for the attorney fees he had expended to date.

[5] After the trial court granted the motions for summary adjudication on the fourth cause of action, plaintiffs voluntarily dismissed (without prejudice) their remaining three causes of action against Transamerica in their second amended complaint: declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing. Plaintiffs thus appeal from a final judgment dismissing their complaint as against Transamerica and First American Title.

[6] The law is now clear that a preliminary report is not an abstract of title, and therefore does not carry rights, duties, or responsibilities associated with the preparation and issuance of such a document; the preliminary report is now deemed nothing more than an offer to issue a title policy. (Ins. Code, §§ 12340.10, 12340.11; *Southland Title Corp.* v. *Superior Court* (1991) 231 Cal.App.3d 530, 537 [282 Cal.Rptr. 425]; *Fidelity National Title Ins. Co.* v. *Miller* (1989) 215 Cal.App.3d 1163, 1175 [264 Cal.Rptr. 17].) For this reason an action for negligence will no longer lie against a title insurance company on the basis of its representations in the preliminary report: "Title insurance is a contract for indemnity under which the

section 339, subdivision 1. It provides a two-year statute of limitations for a liability evidenced by an abstract or certificate of title or a policy of title insurance, and specifies that the statutory period does not commence to run until the aggrieved party has discovered the "loss or damage."[7] (*Contini* v. *Western Title Ins. Co.* (1974) 40 Cal.App.3d 536, 547-548 [115 Cal.Rptr. 257]; *J. H. Trisdale, Inc.* v. *Shasta etc. Title Co.* (1956) 146 Cal.App.2d 831, 839 [304 P.2d 832].) Thus, once the plaintiff discovers the loss or damage, he or she has two years in which to sue the issuer of the abstract of title. (*Roberts* v. *Carter & Potruch* (1956) 140 Cal.App.2d 370, 373 [295 P.2d 515].)

Defendants argued, and the trial court agreed, that the plaintiffs' cause of action accrued no later than January 8, 1970, the date of their letter to Marin Title complaining about the "possible interest" of the City in their property as noted in the 1969 preliminary report. Plaintiffs concede that they "discovered or suspected the acts of professional negligence by October 1969 or January 10, 1970." The thrust of their challenge to the trial court's ruling is that any loss or damage to them at that time was speculative and that they did not suffer "appreciable harm" until 1989 when the City claimed a fee

---

insurer is obligated to indemnify the insured against losses sustained in the event that a specific contingency, e.g., the discovery of a lien or encumbrance affecting title, occurs. [Citations.] The policy of title insurance, however, does not constitute a representation that the contingency insured against will not occur. [Citations.] Accordingly, when such contingency occurs, no action for negligence or negligent misrepresentation will lie against the insurer based upon the policy of title insurance alone. [Citations.]" (*Lawrence* v. *Chicago Title Ins. Co.* (1987) 192 Cal.App.3d 70, 74-75 [237 Cal.Rptr. 264]; accord, *Southland Title Corp.* v. *Superior Court, supra,* 231 Cal.App.3d 530, 537-538; *Fidelity National Title Ins. Co., supra,* 215 Cal.App.3d at p. 1175.)

These statutes, however, have no application to the case at hand as they do not apply to preliminary reports issued before their effective date of January 1, 1982. (*White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 884 [221 Cal.Rptr. 509, 710 P.2d 309]; *Glavinich* v. *Commonwealth Land Title Ins. Co.* (1984) 163 Cal.App.3d 263, 271-272 [209 Cal.Rptr. 266].) Accordingly, an action for abstractor negligence can be brought against a title insurance company on the basis of a preliminary report issued before January 1, 1982. (*White, supra,* 40 Cal.3d at pp. 883-884; *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917, 938-939 [122 Cal.Rptr. 470].)

[7]Section 339 provides in relevant part: "Within two years: 1. . . . an action founded upon a contract, obligation or liability, evidenced by a certificate, or abstract or guaranty of title of real property, or by a policy of title insurance; provided that the cause of action upon a contract, obligation or liability evidenced by a certificate, or abstract or guaranty of title of real property or policy of title insurance shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder."

title ownership of a portion of the property, and therefore, the complaint filed that year was timely.[8]

All agree that the concept of appreciable harm, common in legal malpractice cases, applies to abstractor negligence. (*Wilkinson* v. *Rives* (1981) 116 Cal.App.3d 641, 647 [172 Cal.Rptr. 254].) The question here is when did appreciable harm occur.

As the trial court noted, the lack of any formal governmental claim in 1969 and 1970 did not mean that appreciable harm was lacking. As the complaint itself alleges, the existence of the public trust easement constituted a cloud on the title of the property and that cloud diminished the value of the property. (*J. H. Trisdale, Inc.* v. *Shasta etc. Title Co.*, *supra*, 146 Cal.App.2d 831, 836.) There is no doubt in our minds that had Crocker discovered the public trust easement shortly after purchasing the title insurance in 1957 it could have brought suit for abstractor's negligence against Marin Title on the basis of the omission of the public trust easement in the preliminary report and could have easily defeated a general demurrer asserting the absence of a cause of action premised on the theory that plaintiffs had not been damaged. At that time Crocker had suffered damage, and it was appreciable: the value of his property had been diminished by virtue of the existence of the public trust easement. (Cf. *Overholtzer* v. *Northern Counties Ins. Co.* (1953) 116 Cal.App.2d 113, 124 [253 P.2d 116].)

Plaintiffs make much of the resurvey in 1974, that under that legislation authorizing the survey each local municipality was granted the discretion to settle any disputes with private landowners and to release the public trust easement, and that the City did not actually pursue the easement with respect to the instant property until 1989. We reiterate the absence of the governmental assertion of the easement does not alter the reality of what the complaint establishes: that the public trust easement in fact existed as of 1957, that the easement constituted a cloud on the title of the property, and that Marin Guaranty was negligent in not discovering that easement and listing it on the 1957 preliminary report. What is also undisputed is that plaintiffs discovered that omission at least by 1970, and did not commence

---

[8]We note that plaintiff does not challenge the trial court's ruling on the ground that the case involves a triable issue of fact. To the contrary, plaintiff concedes that there are no triable issues of fact. Instead the argument is that the trial court reached the wrong conclusion on the basis of the undisputed facts. Where there is no dispute over the factual basis for a motion for summary judgment premised on the alleged expiration of a statute of limitations, the legal significance of the undisputed facts present a pure question of law. (*Slavin* v. *Trout* (1993) 18 Cal.App.4th 1536, 1538 [23 Cal.Rptr.2d 219]; *Schrader* v. *Scott* (1992) 8 Cal.App.4th 1679, 1684 [11 Cal.Rptr.2d 433].)

suit until 1989, long after the statute of limitations had run. The trial court did not err in granting summary adjudication of the issue in defendants' favor.

The judgments are affirmed. Respondents to recover their costs on appeal.

Perley, J., and Reardon, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 26, 1994.