[No. B074889. Second Dist., Div. Seven. Feb. 27, 1995.]

JOHN FORMAN, Plaintiff and Appellant, v.
CHICAGO TITLE INSURANCE COMPANY, Defendant and Respondent.

---

**COUNSEL**

Susan A. Mitchell for Plaintiff and Appellant.

Browne & Woods, Allan Browne, Allen B. Grodsky and Robert B. Broadbelt for Defendant and Respondent.

---

**OPINION**

**JOHNSON, J.**—In this case we hold the statute of limitations period on a title insurance policy is equitably tolled while the insurer determines

whether to honor or reject a timely filed insurance claim under that policy. Accordingly, we reverse a judgment based on a finding the statute of limitations had expired.

## FACTS AND PROCEEDINGS BELOW

In 1987, appellant, John Forman, obtained a title insurance policy from respondent, Chicago Title Insurance Company (Chicago Title), in connection with his purchase of vacant land in the City of Bellflower. The face amount of the policy was $590,000. The parties stipulate Chicago Title was guilty of a notable omission in schedule B which purported to list all recorded interests affecting the property. It failed to list a blanket easement recorded on July 21, 1930, in favor of the Los Angeles County Flood Control District which effectively prevents ingress to and egress from the property.

Evidently this omission was first detected in 1989. Chicago Title was asked to prepare a preliminary title report for a prospective purchaser willing to pay $1,150,000 for the vacant land. After discovering its mistake, Chicago Title issued an amendment to the preliminary title report prepared for that buyer disclosing and excepting the flood control district's blanket easement. The prospective purchaser bowed out of the deal. Forman asked for a copy of the amendment and received it August 2, 1989.

A couple of months later, another prospective buyer commissioned a preliminary title report from Provident Title. That company discovered the blanket easement and provided Forman with its report on October 16, 1989.

On November 1, 1989, the department of public works (DPW) wrote Forman offering to sell him a "portion" of the blanket easement for $10,000, but did not advise him which "portion" of the easement could be purchased, however.

On November 8, 1989, Forman filed formal written notice of his policy claim with Chicago Title. Shortly thereafter, Chicago Title began its investigation of the claim. By January 1990, the insurance company had learned the DPW was not willing to part with the portion of its easement fronting Alondra Boulevard, and so advised Forman. This meant there still was no ingress or egress from the property. On February 27, 1990, Chicago Title sent Forman a $10,000 draft so he could buy the portion of the easement DPW was willing to sell.

It was not until four months later, July 31, 1990, that Chicago Title asked a real estate consultant for an appraisal of Forman's property to determine

how much the remaining easement had diminished the property's value. Chicago Title instructed the consultant to appraise the property solely as vacant agricultural land. It was another three and a half months before the consultant submitted his report to Chicago Title on November 15, 1990. He concluded the land was worth $85,000 when Forman bought it and was still worth $85,000 after the easement was discovered.

Chicago Title wrote Forman on November 16, 1990, denying liability for diminution in the property's value. A copy of the appraisal was enclosed and the denial was based on that report.

On October 15, 1991, Forman filed a complaint for breach of the title insurance contract. In his mandatory settlement conference brief and his trial brief Forman also alleged breaches of the covenant of good faith and fair dealing based on unreasonable delays and unfair manipulations during the processing of his insurance claim and for failing to indemnify him for Chicago Title's failure to disclose and except the blanket easement.

In its answer, Chicago Title alleged the statute of limitations set forth in Code of Civil Procedure section 339, subdivision 1 (section 339(1)) barred Forman's entire lawsuit. In a bifurcated trial of this affirmative defense, the trial court dismissed Forman's case on December 11, 1992. The court found the two-year statutory period provided in section 339(1) had expired before Forman filed suit. Judgment was entered December 17, 1992, and Forman timely filed a notice of appeal.

## DISCUSSION

■ Until 1990, Chicago Title might well have thought the statute of limitations continued to run while it, expeditiously or otherwise, went through a series of steps to decide whether to honor the insured's claim, in full or in part. But in that year, the California Supreme Court held a similar statute of limitations was equitably tolled from the time the insured "gives notice of the damage to his insurer, . . . , until coverage is denied." (*Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674, 693 [274 Cal.Rptr. 387, 798 P.2d 1230].)[1] Both the holding and the rationale of that opinion apply with equal vigor to the statute of limitations in this case.

---

[1]Respondent argues appellant waived any argument based on the particular form of "equitable tolling" the Supreme Court announced in *Prudential-LMI* by failing to raise that issue to the trial court. This is merely a legal precedent and a legal argument which dictates a certain legal result based on facts which were determined in the trial below. A party is not foreclosed from presenting a new legal argument or theory on appeal so long as the facts are undisputed. (*Powell* v. *Premier Ins. Co.* (1981) 118 Cal.App.3d 336 [173 Cal.Rptr. 383].) Chicago Title does not suggest, nor could it suggest, resolution of this appellate issue turns on

In *Prudential-LMI*, homeowners discovered a cracked foundation in November 1985. A month later they notified Prudential and other insurers of the property. Prudential spent about as much time investigating that claim as Chicago Title did in this case, ultimately denying coverage in August 1987. The homeowners filed suit under a property damage policy which was governed by a one-year statutory period. The trial court granted summary judgment on statute of limitations grounds and the Court of Appeal upheld that judgment. In doing so, the lower courts used the same reasoning as the trial court did in this case. The limitations period began running with the discovery of the initial loss and continued running while the insurance company investigated the claim. Thus, a lawsuit filed after the statutory period expired was barred.

The California Supreme Court reversed. In doing so, our high court explicitly chose one line of out-of-state cases over another and adopted the reasoning of a New Jersey Supreme Court opinion, *Peloso* v. *Hartford Fire Insurance Co.* (1970) 56 N.J. 514 [267 A.2d 498]. In that case, an insured gave prompt notice of fire damage. The insurance company took nine months to investigate and deny the claim and the insured waited another nine months before filing suit.

The New Jersey Supreme Court noted an inherent inconsistency between a statute which purported to allow insureds a full year to file suit and the three months this insured would have had after the insurer's denial of his claim. The California Supreme Court found this to be an inconsistency, too, quoting with approval from Peloso: " '[The] fair resolution of the statutory incongruity is to allow the period of limitation to run from the date of the casualty but to toll it from the time an insured gives notice until liability is formally declined.' "

"The *Peloso* court recognized that although the limitation period purports to provide the insured with one year in which to institute suit, other policy provisions greatly affect what occurs during this period. As *Peloso* observed, 'the central idea of the limitation provision was that an insured [had] 12 months to commence suit.' . . . Thus, *Peloso* reasoned that 'the period

---

facts which did not come before the court below. Both sides addressed the merits of this legal issue at length in their briefs, and argued it during oral argument. Thus, this court has been fully advised of their positions on the question.

In any event, if neither party had raised this issue in their appellate briefs, it would have been appropriate, if not incumbent, upon this court to raise the issue on its own. Indeed assuming neither party had mentioned the issue, it would have been incumbent on this court to request supplemental briefing and decide the case on this ground. Both the holding and the rationale of *Prudential-LMI* apply with equal vigor to the statute of limitations at issue in this case.

during which an insured's right to bring suit is postponed is for the benefit of the company so that it can pursue its statutory and contractual rights. Accordingly, it ought not to be charged against the insured's time to bring suit.' " (*Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d 674, 688, quoting in part from *Peloso* v. *Hartford Fire Insurance Co., supra,* 267 A.2d 498, 501.)

The *Prudential/Peloso* rationale obviously applies just as strongly to the statute of limitations at issue in this case. That statute "purports to provide the insured with [2 years] in which to institute suit." Yet, "other policy provisions greatly affect what occurs during this period." Those policy provisions have to do with the insurance company's procedures for investigating the claim and are of the same nature in this case as in *Prudential* and *Peloso*. (The main difference is that the insurer's investigative process required 16 months in this case and only 9 months in *Peloso*.) Furthermore, just as in *Prudential* and *Peloso* "the period during which [Forman's] right to bring suit [in this case] is postponed is for the benefit of the company. . . . Accordingly, it ought not be charged against the insured's time to bring suit."

As further justification for its ruling, the California Supreme Court discussed a series of "persuasive policy considerations support[ing] equitable tolling of the limitations period," all of which apply with equal force to the statute of limitations at issue in this case.

Our high court first rejected the insurer's policy argument the "suspension of the one-year suit provision during the time the insurer investigates the loss will frustrate the provision's primary purpose of preventing the revival of stale claims." (*Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d at p. 691.) The Supreme Court explained, "We do not believe that an equitable tolling of the one-year limitation period will frustrate the purpose of [Insurance Code] section 2071, or work a hardship on the insurer, *whose investigation will necessarily have preceded the denial of coverage.*" (*Ibid.,* italics added.) The very same thing can be said about the two-year limitation period of Code of Civil Procedure section 339(1).[2] Equitable tolling will only implement, and not frustrate, the purpose of allowing insureds a two-year period to decide whether to file suit for breaches of a title insurance policy. It will not work any hardship on the insurer who will have been on notice and fully investigated the claim before deciding not to honor that claim.

The Supreme Court then pointed out the many advantages flowing from the equitable tolling of limitation periods while the insurer investigates a

---

[2]Unless otherwise indicated all statutory references are to the Code of Civil Procedure.

claim which the insured has brought to its attention. Among these advantages, it allows the insured to wait until the insurance company completes a thorough investigation before filing suit. This minimizes the number of unnecessary lawsuits where, given time, insurers would satisfy their policyholders' claims without court action. It also "protects the reasonable expectations of the insured" they will not face a "technical rule" resulting in an "unfair forfeiture" just because they allowed the insurance company's investigation to run its course. Further, it will "encourag[e] settlements between insurers and insureds" and "discourage unnecessary bad faith suits that are often the only recourse for indemnity if the insurer denies coverage after the limitation period has expired." (*Prudential-LMI Com. Insurance* v. *Superior Court, supra*, 51 Cal.3d at p. 692.)

All three of these policy values are advanced by equitably tolling the two-year limitation period of section 339(1) just as much as by equitably tolling the one-year period of Insurance Code section 2071.

The Supreme Court found another virtue in equitable tolling while the insurer investigates the claim. "Equitable tolling is also consistent with the policies underlying the claim and limitation periods—e.g., the insurer is entitled to receive prompt notice of a claim and the insured is penalized for waiting too long after discovery to make a claim." Whatever time the insured delays in notifying the insurance company about his claim will be deducted from the period he will be allowed to file suit after the company denies the claim. (*Prudential-LMI Com. Insurance* v. *Superior Court, supra*, 51 Cal.3d at p. 692.) Once again, this virtue obtains in the case of the two-year statute involved here just as it does with the one-year limitations period involved in *Prudential* and *Peloso*.

Under equitable tolling, Forman would not be penalized at the other end because he lodged his claim with the insurance company a few months after discovering the loss. Thus, once his claim was denied he would have been entitled to nearly two years after rejection of his claim to decide whether to file a lawsuit. But he only used 11 months of that time before bringing suit.[3]

Respondent relies heavily on a recent opinion which is readily distinguishable and indeed has no bearing on the facts of this case, *Tabachnick* v. *Ticor*

---

[3]Since we conclude the statute of limitations was equitably tolled and the complaint thus timely filed, we find it unnecessary to consider an alternative, potentially viable grounds for reversing this judgment. That rationale arises out of appellant's contention he was suing Chicago Title for breach of the covenant of good faith and fair dealing in its manner of processing the claim and its denial of the claim, in addition to its initial negligence in failing to discover and list the competing property interest. Forman argues he did not suffer the "loss or damage" claimed in causes of action for breach of the covenant of good faith and fair dealing until the title insurer finished its evaluation process and failed to offer what Forman regarded as a sufficient payment for the diminishment in value he suffered. Thus, it was not

*Title Ins. Co.* (1994) 24 Cal.App.4th 70 [29 Cal.Rptr.2d 59]. In *Tabachnick*, the insured independently learned of the error in the title insurance company's report. Instead of filing any kind of claim with the insurance company *and without notifying the insurance company of its error*, he filed a lawsuit against those who sold him the property. Three years later, for the first time, he filed a claim with the insurance company asking it to indemnify him for the costs of his lawsuit against these third parties.

Here, in sharp contrast, the title insurance company discovered its own error in the course of researching title for a subsequent prospective purchaser of the property. So, unlike the insurer in *Tabachnick*, the insurer here had notice of its mistake long before Forman filed his lawsuit. Furthermore, unlike the insured in *Tabachnick*, Forman filed a claim requesting compensation from the insurance company shortly after learning of the loss and long before the two-year section 339(1) period expired. Consistent with the terms of its policy, the insurer insisted on determining the extent of its error and calculating the amount it would be willing to pay as compensation for its failure to discover the easement. This process took over a year.

In *Tabachnick*, the title insurance company adopted the entirely tenable position no claim had been filed with it—and it had no notice of its error—until three years after the insured discovered his loss. Here, the title insurance company argues the untenable position the statute of limitations was running for over a year while it was processing a claim the insured *had* filed with the company a few months after discovering its loss. Under the terms of the insurance company's own contract, Forman was *required* to

---

until this denial of his full reimbursement claim that these causes of action accrued and the statute of limitations could begin to run against Forman under section 339(1) as to them. (See, 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 351 [" 'A cause of action does not 'accrue' until the party owning it is *entitled to begin* and prosecute an action thereon. It accrues at the moment when he has a legal right to sue on it, and not earlier,' " quoting from *Los Angeles Co.* v. *Metropolitan C. Ins. Co.* (1933) 135 Cal.App. 26, 28 (26 P.2d 699, 27 P.2d 914).] Furthermore, a statute of limitations cannot commence running until the cause of action accrues. Code of Civil Procedure section 312 [statutes of limitation measured as prescribed period *"after* the cause of action shall have *accrued*. . . ." (Italics added.)] *Oakes* v. *McCarthy Co.* (1968) 267 Cal.App.2d 231, 254 [73 Cal.Rptr. 127]; *Hayes* v. *2831 Ellendale Place, Inc.* (1963) 223 Cal.App.2d 362 [36 Cal.Rptr. 94]; *Record Machine & Tool Co.* v. *Pageman Holding Corp.* (1959) 172 Cal.App.2d 164 [342 P.2d 402]; *Los Angeles Co.* v. *Metropolitan C. Ins. Co., supra,* 135 Cal.App. 26.) Chicago Title did not deny Forman's claim until November 16, 1990. Forman filed his lawsuit on October 15, 1991, less than a year after this denial. Thus, he argues, as to these causes of action, at least, his lawsuit was timely.

While we find some possible merit in this argument, it only affects a part of appellant's lawsuit. We already have concluded the statutory period for Forman's entire lawsuit was tolled during the period Chicago Title was processing his insurance claim. Thus, we find it unnecessary at this time to consider an alternative rationale which might have saved some but not all of his causes of action.

submit his claim against the title company to a lengthy evaluation process. When the insurance company finally completed that process, it had eaten up 16 of the 24 months it argues the insured had to file his lawsuit.

This is inconsistent with section 339(1) which provides a *two-year* statute of limitations, not an *eight-month* statute of limitations. Under respondent's view, Forman had only an eight-month window in which he could file a lawsuit against Chicago Title. (If the insurer had taken 23 months, he would only have had a 1-month window. And, if the insurer had taken 25 months, he wouldn't have had a window at all.) In our view, the law does not allow insurers to so foreshorten the insured's statutory period for deciding whether to file suit.

Nothing in *Tabachnick* suggests equitable tolling does not apply to title insurance cases. *Tabachnick* did not even involve an issue of equitable tolling under *Prudential-PMI*. The insured in that case did not file a claim with the insurance company until well after the two-year period expired. Thus, it was too late to toll the running of the statute while the insurance company processed the claim. Tolling can only suspend the running of a statute that still has time to run; it cannot revive a statute which has already run out. In *Tabachnick*, the statutory period had expired before the insured filed his claim with the insurance company. In this case it had not.

The principle policy reason the *Tabachnick* court offered in support of its conclusion the statutory period expired in that case was that otherwise insureds would have the power to extend the limitations period indefinitely by waiting to sue third parties whenever they wanted to. (*Tabachnick* v. *Ticor Title Ins. Co., supra*, 24 Cal.App.4th at p. 74.) As still further evidence *Tabachnick* is inapposite, this policy consideration simply does apply to a rule which equitably tolls a statutory period while an insurance company processes a timely filed policy claim. Under such a rule, it is the insurance company—not the insured—who controls the statutory clock. If it processes the claim quickly, the insurer shortens the overall time within which the insured must file his lawsuit. If it moves at a snail's pace—as this company did—it extends the time within which it can be sued.

### DISPOSITION

The judgment is reversed and remanded with directions to vacate the judgment based on statute of limitations grounds and for further proceedings consistent with this opinion.

Lillie, P. J., concurred.

**WOODS, (Fred) J.**—I respectfully dissent. The majority, among other errors, omit some critical operative facts contained in the record which, in my opinion, militate affirming the judgment. For that reason, I deem it necessary to set forth a statement of facts and proceedings below incorporating the operative facts.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

In September 1987, Forman purchased a vacant 3.89-acre parcel of real property located in the City of Bellflower. In connection with that purchase, Chicago Title issued a title insurance policy to Forman.

At the time Chicago Title issued the title insurance policy, the property was burdened with a blanket easement in favor of the Los Angeles County Flood Control District (the Flood Control Easement). However, that Flood Control Easement was not expressly excepted from coverage in the title policy.

Forman filed his complaint in this action on October 15, 1991. His complaint states a single cause of action for "Breach of Title Insurance Contract," claiming that "[a]s a proximate result of the existence of the [Flood Control Easement], the value of plaintiff's interest in the property has been greatly reduced, all to plaintiff's damage . . . ." In his verified response to Chicago Title's form interrogatory No. 50.2, Forman stated that "the breach [of the title insurance contract] occurred as of the date the policy was issued and relied upon in that Chicago Title failed to ascertain, discover and disclose to plaintiff the existence of the subject easement on the subject property."[1]

On Chicago Title's motion, the court bifurcated the trial to first take evidence on and decide Chicago Title's statute of limitations defense.

In his verified complaint, Forman impliedly anticipated Chicago Title's statute of limitations defense and pled around it by alleging that he first discovered the existence of the Flood Control Easement when he received a letter from a real estate broker named John Glass, dated October 16, 1989,[2] revealing the defect in title. Forman also denied that he "learned about the existence of the easement prior to October 15, 1989," in his verified response to Chicago Title's request for admission No. 1.

---

[1]Chicago Title's form interrogatory No. 50.2 asked: "Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement."

[2]The letter from John Glass referenced in Forman's complaint is actually dated October 13, 1989, but stamped "received October 16, 1989."

The trial court made the following findings of fact in its statement of decision:

"C. Forman learned of the existence of the easement, that it affected his property, and that it had not been mentioned in the title policy, by July 1989 at the latest, when he received a supplemental title report from Chicago Title.[3] (Ex. 2.)

"D. In August of 1989, Forman received from the civil engineering firm of Robin B. Hamers & Associates an easement study plotting the location of the Flood Control Easement on a map of the subject property.[4] (Exs. 6, 31A.)

"E. Prior to October 15, 1989, Forman discussed the Flood Control Easement on a number of occasions with John Glass, a real estate broker who represented a church that had expressed interest in the possibility of buying the subject property."[5]

On appeal, Forman does not challenge any factual findings made by the trial court in its statement of decision.

## DISCUSSION

I. *The Two-year Statute of Limitations Began to Run When Forman Discovered the Existence of the Easement Not Contained in Chicago Title's Title Insurance Policy, Rather Than When the Insurer Denied Forman's Claim as Found by the Majority.*

All parties agree that this case is governed by the two-year statute of limitations contained in Code of Civil Procedure section 339, subdivision 1 (section 339(1)). Furthermore, Forman does not challenge the trial court's finding that Forman knew about the easement at issue more than two years before he filed his complaint. The real contention between the parties is: when does the statute of limitations begin to run? The majority responds to the question by saying not until the title company denies the claim. I find the law to be otherwise and respond to the question by saying "at the time the insured discovers the loss."

Section 339(1) is not an ambiguous statute. It provides that a claim for breach of a title insurance policy accrues (and the two-year statute of

---

[3]This unchallenged finding of fact is supported by the trial testimony of Forman and exhibit 2. Exhibit 2 is the supplemental title report in which Chicago Title specifically pointed out the existence of the Flood Control Easement.

[4]This unchallenged finding of fact is supported by the trial testimony of Robin Hamers, as well as exhibit 6 and exhibit 31A.

[5]This unchallenged finding of fact is supported by the trial testimony of John Glass.

limitations begins to run) upon "discovery of the loss or damage suffered by the aggrieved party thereunder." The trial court found that Forman discovered his loss or damage by July 1989, when he discovered the existence of the Flood Control Easement. Forman contends to the contrary that he did not discover his loss or damage until he learned that Chicago Title had denied his claim for indemnity. The majority, in my opinion, erroneously adopts Forman's view by improper reliance on *Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674 [274 Cal.Rptr. 387, 798 P.2d 1230], discussed hereafter in section III of this dissent.

As will be shown, Forman's theory is contrary to law. Case law is clear that Forman's cause of action began to accrue, and the statute of limitations began to run, when he discovered the existence of the Flood Control Easement.

A. *The recent Tabachnick case holds that the statute of limitations begins to run on plaintiff's discovery of the potential loss that is inconsistent with the title policy.*

The recent case of *Tabachnick* v. *Ticor Title Ins. Co.* (1994) 24 Cal.App.4th 70 [29 Cal.Rptr.2d 59] is remarkably similar to the case at bar, although the majority opines that *Tabachnick* "has no bearing on the facts of this case."

In *Tabachnick*, the purchaser of a condominium, who had obtained title insurance, discovered a recorded document granting a 40-year protected tenancy to his tenant. Without submitting a notice of claim to the title insurer, Tabachnick filed a lawsuit against the individuals and entities involved in his purchase of the property. Nearly three years later, he submitted a claim to the title insurer demanding payment of the fees and costs incurred in that lawsuit, but the insurer refused the tender. Tabachnick then filed a lawsuit against the insurer for breach of contract and breach of the implied covenant of good faith and fair dealing. The trial court sustained the insurer's demurrer on the ground that the claims were barred by the two-year statute of limitations set forth in section 339(1).

On appeal, Tabachnick made precisely the same argument raised by Forman in this case:

"Tabachnick interprets [*Lambert* v. *Commonwealth Land Title Ins. Co.* (1991) 53 Cal.3d 1072 (282 Cal.Rptr. 445, 811 P.2d 737)] to mean that the aggrieved party under a title policy will never discover its loss or damage, and thus a cause of action will not accrue, unless and until the insurer denies

coverage." (*Tabachnick* v. *Ticor Title Ins. Co.*, *supra*, 24 Cal.App.4th 70, 74.) However, the Court of Appeal expressly rejected that theory as "wholly at odds with the rationale of statutes of limitations." (*Ibid.*) The Court of Appeal found that the problem with such a rule of accrual is:

"It suggests that, contrary to the plain language of section 339(1), the commencement of the running of the statute of limitations in title insurance cases is wholly within the power of the insured; that is to say, regardless of how long an insured delays giving notice of a claim to its insurer, the statute of limitations will never bar the insured's suit against the insurer so long as it is brought within two years after the insurer denies coverage." (*Tabachnick* v. *Ticor Title Ins. Co.*, *supra*, 24 Cal.App.4th at p. 74.)

Instead, the *Tabachnick* court held that the statute of limitations begins to run when the insured discovers the loss that may be incurred if the title is not as represented in the title policy: "More than 60 years ago, the Court of Appeal, interpreting section 339(1), described the accrual of the cause of action upon a certificate of guaranty as follows: '[T]he party entitled to the benefit of the guaranty has a right of action to recover upon the contract contained in the certificate itself, and the liability is one that does not accrue until discovery of the loss that may be incurred if the title is not as represented in the certificate.' [Citation.] The conclusion that the cause of action on a certificate of guaranty accrues when the holder of the certificate discovers the potential loss applies equally to a policy of title insurance, though a certificate of guaranty and a title insurance policy differ in certain other respects." (*Tabachnick* v. *Ticor Title Ins. Co.*, *supra*, 24 Cal.App.4th at p. 77.)

Therefore, the Court of Appeal concluded that Tabachnick's cause of action against the defendant title insurer accrued "when he discovered the protected tenancy status of his tenant . . . . He then had two years in which to commence his action against [the title insurer]." (*Tabachnick* v. *Ticor Title Ins. Co.*, *supra*, 24 Cal.App.4th at p. 77.)

Here, under the principles of *Tabachnick*, the trial court did not err in dismissing Forman's case. The trial court found—and Forman does not challenge on appeal—that he knew about the easement by July 1989 at the latest. That is the time the statute of limitations began to run.

Because Forman did not file his complaint until October 15, 1991, Forman's cause of action is barred by the two-year statute of limitations.

B. *Tabachnick is consistent with prior law.*

*Tabachnick* is not the only case that supports the trial court's ruling on when the statute of limitations begins to run on a claim for breach of a title

insurance contract. Another case directly on point is *Contini* v. *Western Title Ins. Co.* (1974) 40 Cal.App.3d 536 [115 Cal.Rptr. 257], in which a purchaser of real estate brought an action against a title insurer and an abstractor of title for damages alleged to have resulted from the existence of an unrecorded judgment reducing the amount of the acreage of the property. The abstractor raised the bar of the two-year statute of limitations, and the crucial question facing the Court of Appeal was, as here, "whether the . . . [plaintiff] had knowledge of the nature and extent of his damage in 1965." (*Id.*, at p. 548.)

In answering this question, the Court of Appeal looked at whether "[the plaintiff] knew in December 1965 that the [unrecorded] judgment . . . had affected the boundaries of his property substantially . . . ." (*Contini* v. *Western Title Ins. Co.*, *supra*, 40 Cal.App.3d at p. 548.) Significantly, the *Contini* court did not consider when the insurance company denied the plaintiff's claim.

In this case, in determining whether Forman had knowledge of his "loss or damage," the trial court did precisely what the *Contini* court did: it determined when Forman knew of the Flood Control Easement and knew that it affected his property. (See also *Abari* v. *State Farm Fire & Casualty Co.* (1988) 205 Cal.App.3d 530, 535, fn. 2 [252 Cal.Rptr. 565].)

Also instructive is *Overholtzer* v. *Northern Counties Ins. Co.* (1953) 116 Cal.App.2d 113 [253 P.2d 116], the seminal case defining the measure of damages on a claim against a title insurer that fails to discover a recorded easement. The *Overholtzer* court made clear that the damage results from the existence of the easement itself.

In *Overholtzer*, the defendant title company failed to list in its title policy a recorded easement granting a third party the right to maintain a water pipe across plaintiffs' property. The Court of Appeal concluded that the damage suffered by plaintiffs resulted from the existence of the easement and that no further damage or effect of the easement was needed in order for the plaintiffs' cause of action for breach of title policy to accrue: "The damage results from the cloud on title. If that cloud impairs the market value of the land, the [plaintiffs] are entitled to whatever damages resulted from that cloud. . . . So far as pleading and proof are concerned, an allegation and proof of the existence of the easement and of diminution in the market value are all that is required." (*Overholtzer* v. *Northern Counties Ins. Co.*, *supra*, 116 Cal.App.2d at p. 124.)

Under the principle of *Overholtzer*, Forman discovered his "loss or damage" the day he discovered the existence of the Flood Control Easement and

that is the day, as concluded by the trial court, that the statute of limitations began to run.[6]

## C. *Legislative history supports the trial court's conclusion.*

Prior to the enactment of the current version of section 339(1), it was the law that the statute of limitations on a claim for breach of a title insurance policy began to run upon the breach of the contract, that is, when the policy was delivered to the insured. (*Lattin* v. *Gillette* (1892) 95 Cal. 317, 320 [30 P. 545].) To ameliorate the harsh results of the holding of *Lattin*, the Legislature amended the statute to delay commencement of the limitations period until discovery of the loss or damage. (*Contini* v. *Western Title Ins. Co.*, *supra*, 40 Cal.App.3d at pp. 547-548.)

As in *Lattin*, the breach in this case occurred the date Chicago Title delivered its policy to Forman. Forman so stated in his verified response to interrogatory No. 50.2, which was read into the record at trial: "[*T*]*he breach occurred as of the date the policy was issued* and relied upon in that Chicago Title failed to ascertain, discover and disclose to plaintiff the existence of the subject easement on the subject property." (Italics added.)

Forman is bound by his own verified interrogatory response. He should not be permitted on appeal to effectively deny that the breach occurred the day the policy was issued and that is the day his cause of action arose. However, because of the Legislature's adoption of the discovery rule in section 339(1), the statute of limitations did not begin to run until Forman discovered the existence of the Flood Control Easement.

The trial court found—and that finding is not challenged on appeal—that Forman discovered the existence of the Flood Control Easement no later than July 1989. Accordingly, the trial court correctly concluded that Forman's failure to file his lawsuit within two years of that time bars his claim.

## II. *Commencement of the Statute of Limitations Was Not Delayed Until Chicago Title Denied Liability as Held by the Majority.*

Forman argues that the rule of delayed commencement saves him from his failure to file his action within two years of discovering the Flood Control Easement. Forman asserts that a title insurer's "duty to indemnify should commence upon the submission of a claim and *continue* until the claim is paid or denied." (Original italics.) Under what Forman refers to as the

---

[6]Cf. *Herbert A. Crocker & Co.* v. *Transamerica Title Ins. Co.* (1994) 27 Cal.App.4th 1722 [33 Cal.Rptr.2d 313].

delayed commencement theory, he argues, and the majority erroneously adopts, the view that his cause of action did not accrue (and the statute of limitations did not begin to run) until Chicago Title denied his request to be indemnified for his loss. However, the argument lacks merit for numerous reasons, and the majority errs in adopting this view.

### A. *Forman's proposed delayed commencement rule was rejected by Tabachnick.*

The rule of delayed commencement urged by Forman (that the insured's cause of action does not accrue until the insurer denies his or her claim) was expressly rejected by the Court of Appeal in *Tabachnick* v. *Ticor Title Ins. Co., supra,* 24 Cal.App.4th 70, 74. As discussed previously, the Court of Appeal in *Tabachnick* found that such a rule of accrual would be "wholly at odds with the rationale of statutes of limitations" because it would place "the commencement of the running of the statute of limitations in title insurance cases wholly within the power of the insured." (*Id.,* at p. 74.) Thus, under Forman's proposed delayed commencement rule, the statute of limitations would never bar an insured's action on a title insurance contract so long as it is brought within two years after the insurer denies coverage—even if the insured discovers the loss and then delays 50 years or longer before giving notice of the claim to the insured. Such a rule clearly would be unworkable and would render the statute of limitations meaningless.

### B. *Delaying commencement of the statute of limitations would be contrary to the plain language of section 339(1).*

Forman's proposed application of the delayed commencement rule is also directly contrary to the plain language of the governing statute. The first part of section 339(1) generally states that a two-year limitations period applies to both (1) "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing," and (2) *"an action founded upon a contract, obligation or liability, evidenced by* a certificate, or abstract or guaranty of title of real property, or by a policy of title insurance . . . ." (Italics added.) Significantly, the second part of section 339(1) states a special rule of accrual that applies only to the second group of actions: "provided, that *the cause of action upon a contract, obligation or liability evidenced by a* certificate, or abstract or guaranty of title of real property or *policy of title insurance shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder.*" (Italics added.) (§ 339(1).)

It is therefore clear that, when the Legislature enacted section 339(1) and specifically provided that a claim for breach of a title insurance contract

accrues upon "discovery of the loss or damage," it carefully considered the issue and drafted the statute to say what it intended to be the rule of accrual governing claims for breach of title insurance contracts. If the Legislature had intended such causes of action to accrue upon the insurer's denial of a claim, it would have said so. Adopting Forman's rule of accrual has resulted in the majority ignoring the plain language of the statute and instead substituting its own rule for that enacted by the Legislature.

### C. *Forman's delayed commencement analysis was rejected by Lambert.*

Forman's delayed commencement analysis has also been rejected by the California Supreme Court in *Lambert v. Commonwealth Land Title Ins. Co.* (1991) 53 Cal.3d 1072 [282 Cal.Rptr. 445, 811 P.2d 737]. Forman appears to have borrowed the term "delayed commencement" from *Israelsky v. Title Ins. Co.* (1989) 212 Cal.App.3d 611 [261 Cal.Rptr. 72], which uses the term in a completely different context. *Israelsky* relied on the continuing nature of the duty to defend to hold that ". . . the statute of limitation for claims for breach of the duty to defend does not commence until entry of a final judgment in the underlying litigation." (*Id.*, at p. 623.) However, in *Lambert*, the California Supreme Court expressly rejected the Court of Appeal's delayed commencement analysis in *Israelsky* as "flawed," because "[i]t overlooks the language of section 312 that the action must be commenced within the statutory period after the cause of action has 'accrued.' " (*Lambert, supra*, 53 Cal.3d at p. 1077.)

Although the *Lambert* court agreed with the result of *Israelsky*, it found the correct basis for that result was the doctrine of equitable tolling, rather than the continuing duty or delayed commencement analysis. In *Lambert*, the court held that, while the statute of limitations on a cause of action for breach of the duty to defend accrues immediately upon an insurer's refusal to defend, the limitations period is "equitably tolled until the underlying action is terminated by final judgment." (53 Cal.3d at p. 1077.)

The *Lambert* court's only apparent reason for applying this equitable tolling rule is that, when an insurer refuses to defend its insured against a third party's lawsuit, it would be unfair "to require an insured—often a private homeowner—to defend the underlying action, at the homeowner's own expense, and *simultaneously* to prosecute—again at the homeowner's own expense—a separate action against the title company for failure to defend." (53 Cal.3d at p. 1078, original italics.) The *Lambert* court further observed that " '[t]he unexpected burden of defending an action may itself make it impractical to immediately bear the additional cost and hardship of prosecuting a collateral action against an insurer.' " (*Id.*, at p. 1078.)

But this reason for invoking the equitable tolling doctrine does not apply to Forman's case because his cause of action alleges breach of the duty to indemnify him for his loss. Forman was not sued by a third party, and he was not put in the position of having to be a party to two simultaneous lawsuits.[7] The *Lambert* equitable tolling rule therefore does not apply here, and the statute of limitations began to run when Forman discovered the existence of the Flood Control Easement.

D.  *Forman is estopped from making this delayed commencement argument because it contradicts his judicial admission.*

Forman is also estopped from asserting his delayed commencement theory because it directly contradicts his judicial admission in his response to form interrogatory No. 50.2 that "the breach [of the title insurance contract] occurred as of the date the policy was issued . . . ." Since that admission is binding on Forman in this action, he cannot now be permitted to take a position contradicting it by arguing that the breach occurred at a later time (i.e., when his claim to Chicago Title was denied). (See *Smith* v. *Walter E. Heller & Co.* (1978) 82 Cal.App.3d 259, 268-269 [147 Cal.Rptr. 1].)

III.  *Forman's "Equitable Tolling" Argument Was Not Properly Raised Before the Trial Court and Is Without Merit in Any Event.*

Forman argues, essentially for the first time on appeal, that an equitable tolling doctrine that applies to a one-year statute of limitations for actions on homeowners fire insurance policies under Insurance Code section 2071 should be extended to apply to the two-year statute of limitations for actions on title insurance policies under section 339(1).

A.  *Forman has essentially waived the equitable tolling argument because he did not properly raise it in the trial court.*

Forman has waived this new equitable tolling argument because he failed to allege it in his complaint or properly raise it before the trial court.

" 'The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would

---

[7]In *Tabachnick*, the court appears to indicate that the *Lambert* equitable tolling rule could apply to an action against a title insurer for failing to reimburse its insured for legal expenses incurred in a suit brought by the insured against a third party to protect its title, as well as one for legal expenses incurred in a suit brought against the insured by a third party. (*Tabachnick* v. *Ticor Title Ins. Co., supra*, 24 Cal.App.4th at p. 77.) However, that statement is dicta and has no application to Forman's claim because he was not litigating two actions at one time.

not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' " (*Richmond* v. *Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874 [242 Cal.Rptr. 184].)

Forman's equitable tolling argument is based on *Prudential-LMI Com. Insurance* v. *Superior Court, supra*, 51 Cal.3d 674, which Forman cites for the first time on this appeal. However, as demonstrated by the record on appeal, Forman not only failed to allege this equitable tolling defense to the statute of limitations in his complaint, but he also failed to raise it in his mandatory settlement conference statement, his pretrial briefs, his trial brief, and his arguments at trial.

Forman has clearly waived this equitable tolling argument based on *Prudential.* It would be unfair to both the trial court and Chicago Title to permit Forman to change his theory on which the case was tried by raising this new argument for the first time on appeal as the majority erroneously permits.

B.  *The Prudential equitable tolling rule does not apply to the two-year statute of limitations on title insurance contract actions.*

Even if Forman were permitted, as the majority has done, to raise this new argument on appeal, it would still fail because (1) the *Prudential* court, in the third paragraph of the opening portion of its lengthy opinion, expressly limited its application of the equitable tolling rule to the one-year statute of limitations governing homeowners fire insurance policies, and specifically intimated no view as to its application in a commercial liability context, and (2) the *Prudential* court's reasons for adopting the rule in a progressive property damage case do not apply to the two-year statute of limitations governing actions on title insurance contracts or the facts presented by the instant action.

In *Prudential*, the plaintiffs owned an apartment house and purchased homeowners fire and extended coverage property insurance policies from Prudential and other insurance companies. The policy issued by Prudential contained a standard one-year suit provision required as part of the California Standard Form Fire Insurance Policy under Insurance Code sections 2070-2071, which barred any action on the policy "unless commenced within 12 months next after inception of the loss." (*Prudential-LMI Com. Insurance* v. *Superior Court, supra*, 51 Cal.3d at pp. 679-680.)

The plaintiffs discovered a crack in the foundation of the building in November 1985 and filed a claim with Prudential one month later. Prudential then conducted an investigation of the claim. In August 1987, shortly

before receiving notice that Prudential had denied their claim, the plaintiffs sued Prudential for, inter alia, breach of contract and bad faith. (*Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d at pp. 680-681.)

Prudential moved for summary judgment, arguing "that because plaintiffs filed suit 20 months after filing their claim, the action was barred by the standard one-year suit provision contained in its policy . . . ." (*Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d at p. 681.) Although the Court of Appeal issued a peremptory writ of mandate directing the trial court to grant Prudential summary judgment on its statute of limitations defense, the California Supreme Court reversed the decision of the Court of Appeal and held that the plaintiffs' action was not barred by the statute of limitations. (*Id.,* at pp. 678-679, 700.)

The Supreme Court held that the one-year statute of limitations governing claims on homeowners fire insurance policies should be equitably tolled from the time the insured files a timely notice of claim to the time the insurer denies the claim. (*Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d at pp. 678, 693.) The primary reason stated by the court for adopting this equitable tolling rule was to avoid the unfairness of "[t]he seemingly anomalous conclusion—that an insured must file a lawsuit *before* the insurer has completed its investigation and denied the claim."[8] (*Id.,* at pp. 687, 690, 692, 693, italics added.) The court also observed that the equitable tolling rule was needed because Insurance Code section 2071's *one-year* limitation period is "considerably shorter" than the usual periods for ordinary breach of contract actions. (51 Cal.3d at p. 691.)

In light of the rationale in *Prudential,* Forman's argument that *Prudential*'s equitable tolling rule applies to his claim for breach of a title insurance contract lacks merit.

First, the *Prudential* court strictly limited its holding to the one-year statute of limitations on standard homeowners fire insurance policies: ". . . *we emphasize that our holding is limited in application to the first party progressive property loss cases in the context of a homeowners insurance policy.*" (Italics added.) (*Prudential-LMI Com. Insurance* v. *Superior Court,*

---

[8]The *Prudential* court made clear that it adopted the equitable tolling rule in order to resolve the anomaly of requiring an insured to file suit before the insurer completes its investigation and denies the claim: "*We conclude that proper resolution of the foregoing anomaly* is to allow the one-year suit provision of section 2071 to run from the date of 'inception of the loss,' as defined above, but to toll it from the time an insured gives notice of the damage to his insurer, pursuant to applicable policy notice provisions, until coverage is denied." (*Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d at p. 693, italics added.)

*supra*, 51 Cal.3d at p. 679.) Neither *Prudential* nor any other case has extended the equitable tolling rule to actions for breach of title insurance contracts or any other statutes of limitation longer than one year.

Second, the rationale compelling the Supreme Court to apply the equitable tolling rule to the one-year statute of limitations on homeowners fire insurance policy actions simply does not apply to the two-year statute of limitations on title insurance policy actions, as demonstrated by the facts in this case. In *Prudential*, the equitable tolling rule was needed to avoid unfairly barring the plaintiffs' suit even though it was filed *before* the insurer completed its investigation and denied the plaintiffs' claim. (*Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d at p. 693.) However, no such anomalous situation occurred here because the two-year limitations period on Forman's action was not close to expiring before his claim was denied. Indeed, after Forman's claim was denied, he still had eight months to file his action, but failed to do so.

Also not present here is the *Prudential* court's other reason for creating an equitable tolling rule for homeowners fire insurance policies: that the one-year limitations period on such policies is "considerably shorter" than the limitations periods for other types of breach of contract actions. (*Prudential-LMI Com. Insurance* v. *Superior Court, supra,* 51 Cal.3d at p. 691.) In contrast to the one-year statute of limitations that gave the court concern in *Prudential,* the two-year limitations period for title insurance policy actions is precisely the same as that governing actions for breach of ordinary contracts not founded upon a writing. (§ 339(1).)

Thus, the *Prudential* equitable tolling rule does not apply to the statute of limitations on title insurance contract actions at issue here, and the rationale for applying the rule in *Prudential* does not exist here, even though the majority would apply it with "equal vigor" to this case, and apparently any other insurance claim case, regardless of the circumstances.

C. *Forman does not plead or present any evidence that Chicago Title has performed any affirmative acts justifying application of the estoppel doctrine.*

Finally, Forman discusses the requirements for estoppel against a defendant's asserting the statute of limitations as a defense.[9] But Forman does not

---

[9]Estoppel to assert a statute of limitations defense requires that the plaintiff allege in his complaint " 'acts or conduct affirmatively engaged in [by the defendant] to procure delay for

argue that Chicago Title is guilty of ever performing any affirmative acts inducing Forman to believe his claim would be settled. Indeed, Forman does not even allege that he believed his claim would be settled.

These omissions on appeal are consistent with Forman's prosecution of his action in the trial court. Forman neither alleged any facts supporting an estoppel in his complaint nor offered any evidence at trial of such a defense to the statute of limitations. Forman's failure to allege facts in his complaint to support an estoppel defense should prevent him from effectively asserting that theory on appeal. (See *Saliter* v. *Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 297 [146 Cal.Rptr. 271] [to invoke special defense to the statute of limitations, plaintiff must specifically plead facts establishing it].)[10]

But even if Forman had properly pleaded an estoppel to the statute of limitations, it would still not save his cause of action. That is because "a plaintiff cannot rely on an estoppel if there is still ample time to take action within the statutory period after the circumstances inducing delay have ceased to operate." (*Santee* v. *Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 716 [269 Cal.Rptr. 605]; *Lobrovich* v. *Georgison* (1956) 144 Cal.App.2d 567, 573-574 [301 P.2d 460].) Here, Forman cannot claim the effects of any estoppel after he received notice of the denial of his claim in November 1990. At that point, he still had eight months to file his action, but failed to do so within that period.

IV. *Forman's Public Policy Arguments Neither Compel Nor Justify Overriding the Rule Enacted by the Legislature in Section 339(1).*

In the last section of Forman's brief on appeal, he makes various policy arguments which he contends support supplanting section 339(1) with an

---

purposes of settlement, or investigation or otherwise, upon which the [plaintiff] has relied and by which he has been induced to delay the filing of a claim until after the expiration of the statutory period.' " (*Muraoka* v. *Budget Rent-A-Car, Inc.* (1984) 160 Cal.App.3d 107, 116 [206 Cal.Rptr. 476].)

[10]See also *Bradler* v. *Craig* (1969) 274 Cal.App.2d 466, 472 [79 Cal.Rptr. 401] (" '[t]he showing of excuse for late filing must be made in the complaint' "); *Kunstman* v. *Mirizzi* (1965) 234 Cal.App.2d 753, 757 [44 Cal.Rptr. 707] (complaint must allege affirmative promises or misrepresentations to support estoppel defense to statute of limitations); *Stafford* v. *Ballinger* (1962) 199 Cal.App.2d 289, 295 [18 Cal.Rptr. 568] ("if there are any facts which will obviate the running of the statute of limitations it is incumbent upon the pleader to allege such facts").

equitable tolling rule. These arguments are merely extensions of Forman's equitable tolling contentions addressed previously.

However, Forman's policy arguments fail because they would require this court to ignore the plain language of section 339(1) and override the Legislature's balancing of the policy concerns by substituting another limitations rule that is nowhere to be found in the statute or its legislative history. Forman's arguments about what the law should be and what it ought to require are more properly addressed to the Legislature. (See e.g., Cal. Const., art. III, § 3; *California Radioactive Materials Management Forum* v. *Department of Health Services* (1993) 15 Cal.App.4th 841, 870 [19 Cal.Rptr.2d 357] [". . . it is for the Legislature to make public policy"]; *Griffin* v. *County of Colusa* (1941) 44 Cal.App.2d 915, 924 [113 P.2d 270] [courts should not attempt to legislate by decision].)

V. *The Majority's Oblique Reference at Footnote 3 to Forman's "Cause of Action" for Breach of Implied Covenant of Good Faith and Fair Dealing Is of No Moment in Preserving Forman's Claim From the Running of the Statute of Limitations in Section 339(1).*

Apparently sensing the vulnerability of the majority opinion, my colleagues erect a makeweight rationale as a safety net. The rationale is that Forman pled for relief in the form of breach of the implied covenant of good faith and fair dealing and that the statute of limitations on this claim would not run until the claim is denied. Forman's method of pleading this cause of action constitutes chronic anemia at best. Forman's reference to this requested relief appears to be a mere afterthought without sufficient detail or reasons. Paragraph 17 of Forman's complaint makes sole reference to violation of the covenant of good faith and fair dealing as follows: "17. In refusing to fulfill its obligations under the above-described policy, defendant acted in violation of the covenant of good faith and fair dealing that is implied by law in the above-mentioned policy."

In *Abari* v. *State Farm Fire & Casualty Co, supra,* 205 Cal.App.3d, 530, 536, the court stated: "Contrarily, Abari alleged in both the bad faith and unfair practices counts that '[b]y reason of defendant STATE FARM['s] . . . breach of the covenant of good faith and fair dealing, plaintiff has been and continues to be damaged in an amount equal to the benefits payable under the policies, plus interest thereon.'" Abari's pleading thus reveals his bad faith and unfair practice claims are a transparent attempt to recover *on the*

*policy* notwithstanding his failure to commence suit within one year of accrual.

For the reasons stated, I would affirm the judgment and award costs of appeal to respondent.

Respondent's petition for review by the Supreme Court was denied June 1, 1995.