[No. B054495. Second Dist., Div. Three. June 21, 1991.]

SOUTHLAND TITLE CORPORATION et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JOEL W. NYE et al., Real Parties in Interest.

**COUNSEL**

Hausman & Sosa and Carlos E. Sosa for Petitioners.

No appearance for Respondent.

Schock & Schock and John P. Schock for Real Parties in Interest.

**OPINION**

**CROSKEY, J.**—Petitioners Southland Title Corporation, Land Title Insurance Company and Lawyers Title Insurance Corporation (Southland) seek a writ of mandate compelling the Los Angeles Superior Court to vacate an order which overruled Southland's demurrer to a cause of action for negligence and to enter a new and different order sustaining that demurrer. It was alleged that Southland had negligently prepared a preliminary report of title upon which a prospective buyer of residential real property had relied in deciding to purchase. The report failed to reflect a recorded flood control easement which affected the property.

We hold that while the law was otherwise prior to January 1, 1982, amendments to the Insurance Code, effective upon that date, prevent the

assertion of a claim of negligence against the issuer of a preliminary report of title. The trial court should have sustained Southland's demurrer. We will therefore direct the issuance of a peremptory writ.

PROCEDURAL AND FACTUAL BACKGROUND

In June of 1990, the real parties in interest, Joel W. Nye and Patricia A. Nye (the Nyes), filed an action for damages against Southland. They sought recovery in both contract and tort. For purposes of this proceeding, we regard as true the facts alleged in their pleading. (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 213-214 [197 Cal.Rptr. 783, 673 P.2d 660].) Those facts may be summarized as follows.

Prior to July 24, 1986, the Nyes had apparently entered into a conditional agreement to purchase a home in La Crescenta, California, for the sum of $92,000. As a normal and regular part of the sale and escrow process, a preliminary report of title was ordered from Southland on July 24, 1986.[1] When this report was ultimately prepared and submitted to the Nyes for their approval it did not contain an easement for a right-of-way for a flood control channel which had been recorded on February 24, 1967, and which affected the property the Nyes were purchasing through the pending escrow. In reliance upon the state of title as reflected in Southland's preliminary report, the Nyes closed escrow on the property on December 30, 1986. They received Southland's policy of title insurance which, by its terms, insured the Nyes against any loss or damage sustained, not to exceed $92,000, by reason of any defect in or lien or encumbrance on the title to the described property. As was the case with the preliminary report of title, the policy did not except the 1967 flood control easement. The Nyes did not discover the existence of the easement until June 5, 1989.

Upon such discovery, the Nyes made a claim against Southland. Thereafter, in June of 1990, the subject complaint was filed. The Nyes alleged that the fair market value of their property was $150,000 if not encumbered by the flood control easement, but only $50,000 with the encumbrance. While their damages under the contract claim for breach of the policy of title insurance could not exceed $92,000, the Nyes sought to recover the full $100,000 claimed damages based upon the negligence allegations of the second count in their complaint.

In that count, the Nyes specifically alleged that Southland had negligently performed a search of the title to the property and had failed to discover, or

---

[1] This date is alleged in the complaint to be "July 24, 1987." However, the necessary sequence of events makes it obvious that this was a typographical error.

reflect in the preliminary report, the 1967 flood control easement. They further alleged that they had specifically relied upon that report in making their final decision to complete the purchase and close escrow on December 30, 1986.

Southland demurred to this second count. The trial court overruled the demurrer and Southland now asks us to grant a writ of mandamus directing the trial court to vacate such order and to enter a new and different one sustaining the demurrer. We issued an alternative writ on December 19, 1990.

## CONTENTIONS OF THE PARTIES

Southland relies on Insurance Code sections 12340.10 and 12340.11 which were enacted in 1981 as amendments to the portion of the code which relates to title insurance [2] and argues that such statutory changes now bar an action for a negligently prepared preliminary title report.

The Nyes respond that this legislative change only defines the contractual relationship and responsibilities between a title insurer and its customers. They argue that there is no impact upon the liability of a title insurer for negligence in the issuance of a preliminary report which fails accurately to describe title to real property where the insurer is aware that such report will be relied upon by another in purchasing the described property. In short, they contend that these statutory changes had no impact on the then-existing law with respect to the liability of title insurers for negligently prepared preliminary title reports.

---

[2]Unless otherwise indicated, all code references are to the Insurance Code.

Section 12340.10 states: " 'Abstract of title' is a written representation, provided pursuant to a contract, whether written or oral, intended to be relied upon by the person who has contracted for the receipt of such representation, listing all recorded conveyances, instruments or documents which, under the laws of this state, impart constructive notice with respect to the chain of title to the real property described therein. An abstract of title is not a title policy as defined in Section 12340.2."

Section 12340.11 states: " 'Preliminary report', 'commitment', or 'binder' are reports furnished in connection with an application for title insurance and are offers to issue a title policy subject to the stated exceptions set forth in the reports and such other matters as may be incorporated by reference therein. *The reports are not abstracts of title, nor are any of the rights, duties or responsibilities applicable to the preparation and issuance of an abstract of title applicable to the issuance of any report. Any such report shall not be construed as, nor constitute, a representation as to the condition of title to real property, but shall constitute a statement of the terms and conditions upon which the issuer is willing to issue its title policy, if such offer is accepted.*" (Italics added.)

## DISCUSSION

### 1. *Prior Case Law Characterized Preliminary Title Reports as Abstracts of Title*

The question of a title company's liability for issuing a defective preliminary report which is then ordered and relied on by a purchaser of property was examined in *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917 [122 Cal.Rptr. 470]. There, the court stated: "When a title insurer presents a buyer with both a preliminary title report and a policy of title insurance, two distinct responsibilities are assumed. In rendering the first service, the insurer serves as an abstractor of title—and must list *all* matters of public record regarding the subject property in its preliminary report. [Citations.] The duty imposed upon an abstractor of title is a rigorous one: 'An abstractor of title is hired because of his professional skill, and when searching the public records on behalf of a client he must use the degree of care commensurate with that professional skill. . . . the abstractor must report all matters which could affect his client's interests and which are readily discoverable from those public records ordinarily examined when a reasonably diligent title search is made.' [Citations.] Similarly, a title insurer is liable for his negligent failure to list recorded encumbrances in preliminary title reports. [Citations.]" (*Id.* at pp. 938-939, quoting from *Contini* v. *Western Title Ins. Co.* (1974) 40 Cal.App.3d 536, 545-546 [115 Cal.Rptr. 257].) On the issue of damages, the court stated: "When a title insurer breaches its duty to abstract title accurately, it is liable, in tort, for all the damages proximately caused by said breach. (Civ. Code, § 3333.)" (48 Cal.App.3d at p. 939.) The efforts of title insurers to contractually limit this liability have been consistently rejected.[3]

It is on this basis of "abstractor negligence" that the Nyes contend Southland's demurrer to the negligence cause of action was properly overruled. ██ For its part, Southland asserts that the Legislature has

---

[3]In *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870 [115 Cal.Rptr. 572], the defendant title insurance company sought to relieve itself of its liability for negligent abstraction of title by pointing to language in the preliminary title report itself which stated that that report was "issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability [was] assumed thereby." The court found that the quoted language was not in a *contract* and even if it were, given the public interest of the insurer's business, the insurer could not relieve itself of negligence liability "by an adhesory contract." (*White* v. *Western Title Ins. Co., supra,* 40 Cal.3d at p. 884.)

The court also rejected an attempt by the defendant to have section 12340.11 applied to the case. The court noted that the preliminary title report at issue there was prepared in 1978, prior to the date section 12340.11 became effective (Jan. 1, 1982). The court concluded, "Whatever the effect of this statute upon preliminary title reports prepared after January 1, 1982, it has no effect upon the present case." (*White* v. *Western Title Ins. Co., supra,* 40 Cal.3d at p. 884.)

effectively restricted a cause of action for negligence in the preparation of a preliminary report of title by its enactment of sections 12340.10 and 12340.11. Citing *Ikuta* v. *Ikuta* (1950) 97 Cal.App.2d 787 [218 P.2d 854], Southland argues that the Legislature has the power to eliminate or restrict causes of action and it has done so here. We agree with Southland.[4]

2. *The Legislature Imposed a Distinction Between "Preliminary Report" and "Abstract of Title"*

■ The Legislature can set public policy for a state through its enactments (*Thorne* v. *Macken* (1943) 58 Cal.App.2d 76 [136 P.2d 116]), and here the Legislature has determined to make a formal distinction between an "abstract of title" and a policy of title insurance. It is only in connection with the latter document that a "preliminary report" of title is issued. No longer will these two separate and distinct transactions be intermingled as they have been by prior case law. (*Jarchow* v. *Transamerica Title Ins. Co.*, supra, 48 Cal.App.3d at pp. 938-939.)

A preliminary report, for which little or no charge is made, is merely the inducement to purchase a title policy. It will no longer be treated or considered to have the legal consequence of an abstract of title. If a current representation as to the status of title is required then an abstract can be ordered and separately purchased.[5]

The effect of section 12340.10 is to make clear that a person who contracts for the written representation known as an "abstract of title" will receive all of the rights associated with that written representation. Such a purchased and express representation can be relied upon. If negligently prepared, the abstractor obviously would be exposed to all liability which normally flows from the consequences of professional malpractice.

[4]Indeed, we believe it to be obvious that the enactment of sections 12340.10 and 12340.11 was a direct legislative reaction to judicial decisions such as *Jarchow* v. *Transamerica Title Ins. Co.*, supra, 48 Cal.App.3d 917, and to the inability of the title insurance industry to avoid abstractor liability by express contractual agreement with the consumers of preliminary title reports.

[5]As the Department of Insurance stated to the Governor, in 1981 when it forwarded its recommendation ("No Objection to Signing") on the legislation which included sections 12340.10 and 12340.11, "This bill would define the appropriate terms to ensure that the distinction between 'abstract of title' and 'preliminary report' is restored to the usage and practice in effect before the cases were decided. . . . [¶] [It] will help assure that the title insurers are able to charge appropriate premiums for foreseeable liability, rather than as is the case under current case law. Since the premiums or fees charged for preliminary reports are much less than those for abstracts, the result of such decisions is to impose liability on the insurers to an extent beyond which they have computed the premium charge (i.e., an unfunded liability)."

However, section 12340.11 establishes that preliminary reports are merely "offers to issue a title policy." It is also clear that a preliminary report is not an abstract of title (i.e., not a "written representation, provided pursuant to a contract") and therefore does not carry the "rights, duties or responsibilities" associated with the preparation and issuance of such a written document. Thus, under section 12340.11, preliminary reports cannot be construed as, or constitute, a representation, by the title insurance company, of the condition of the title of the property about which the prospective buyer has inquired.

These statutory changes recognize a fundamental truth about title insurance as contrasted with the practice of abstracting and representing the status of title to property. ■ "Title insurance is a contract for indemnity under which the insurer is obligated to indemnify the insured against losses sustained in the event that a specific contingency, e.g., the discovery of a lien or encumbrance affecting title, occurs. [Citations.] The policy of title insurance, however, does not constitute a representation that the contingency insured against will not occur. [Citations.] Accordingly, when such contingency occurs, no action for negligence or negligent misrepresentation will lie against the insurer based upon the policy of title insurance alone. [Citations.]" (*Lawrence* v. *Chicago Title Ins. Co.* (1987) 192 Cal.App.3d 70, 74-75 [237 Cal.Rptr. 264].) A title insurance policy is ". . . a contract to indemnify against loss caused by defects in the title or encumbrances on the title. It is not a representation that the title is in any particular condition. [Citation.]" (*Smith* v. *Commonwealth Land Title Ins. Co.* (1986) 177 Cal.App.3d 625, 631 [223 Cal.Rptr. 339].) The statutory changes establish that a "preliminary report" is an integral part of the issuance of title insurance and nothing more.

■ In spite of the Nyes' argument that in the everyday world of real estate transactions buyers and sellers continue to order and rely upon preliminary title reports as an integral part of the sale transaction,[6] it is now clear that such reliance cannot be justified and is done only at a party's peril. "Insurance Code sections 12340.10 and 12340.11 make 'clear that no reliance may be placed on a preliminary report or a policy of title insurance to show the condition of title.' (Cal. Title Insurance Practice (Cont. Ed. Bar

---

[6]This argument is not supported by any persuasive authority. For example, the Nyes cite us to *Seeley* v. *Seymour* (1987) 190 Cal.App.3d 844 [237 Cal.Rptr. 282] for the proposition that a title insurer's negligent preparation of a document with knowledge that a third person will rely thereon is sufficient to support liability. Whatever the efficacy of this statement as a general proposition of the law of professional negligence, it has no application to preliminary reports of title in view of the expressed provisions of section 12340.11. Moreover, *Seeley*, on its facts, has little to do with our case. There, the title company was held liable for the negligent recording of a nonrecordable document. This was, quite simply, an act of professional malpractice for which the title company was properly held accountable.

Supp. 1988) § 2.11, p. 14.) 'A preliminary report is not an abstract of title. It only reflects the terms under which the insurer is willing to issue a policy of title insurance. The terms and conditions under which the policy of insurance may be issued may or may not reflect the true condition of record title. The insurer may choose to ignore or omit a possible exception to title based on an underwriting decision.' (*Id.*, § 3.19 at p. 37.) Given Insurance Code sections 12340.10 and 12340.11, 'it is clear that any title search or examination is performed by the insurer solely for the purpose of seeking to evaluate its underwriting decision in issuing the policy, not for the benefit of the insured.' (*Id.*, § 5.27 at p. 67.)" *Fidelity National Title Ins. Co.* v. *Miller* (1989) 215 Cal.App.3d 1163, 1175 [264 Cal.Rptr. 17].)[7]

Such a construction of section 12340.11 effectively carries out the actual intent of the parties. The title insurer intends by the issuance of a preliminary report to provide only a representation that a policy of title insurance will subsequently be issued insuring the title in the condition described in the preliminary report. The prospective insured *reasonably* concludes a transaction in reliance not on the preliminary report, but on the anticipated policy of title insurance. A title insurer expressly does not intend to induce a buyer or lender to consummate a transaction in reliance on a preliminary report of title. Title companies are in the business of issuing title insurance *policies*. They do not charge for preliminary reports, but their profits are derived from the premiums earned from selling insurance policies, where the amount of the premium is commensurate with the risk assumed. The issuer of a preliminary report merely intends to induce the prospective insured to purchase a policy of title insurance and to declare in advance of such purchase precisely the risk which it will agree to assume. (See 3 Miller & Starr, Current Law of Cal. Real Estate (2d ed. 1989) § 7:138, p. 244.)

As the Nyes have expressly alleged that all they requested or received was a "preliminary report of title," the trial court should have sustained Southland's demurrer to their cause of action for negligence since the preliminary report upon which that cause of action was based was issued after the effective date of sections 12340.10 and 12340.11. (*White* v. *Western Title Ins. Co.*, *supra*, 40 Cal.3d at p. 884.) However, the Nyes should not be foreclosed by the injudicious use of titles if the substance of the transaction with Southland was otherwise. (See *Fidelity National Title Ins. Co.* v. *Miller*, *supra*, 215 Cal.App.3d at p. 1176.) Thus, they should be given an

---

[7]*Fidelity*, however, is a case which does not squarely present the issue before us. In that case, a title insurer brought an action against the seller of a parcel of real property to recover the sum which it had paid to the purchaser on account of the existence of a prior recorded restrictive covenant which the seller had given to a third party but allegedly had not disclosed to either the buyer or the title company. As there was an issue of fact as to whether the seller had made a full disclosure to the title insurer, summary judgment in its favor was improper.

opportunity to amend their complaint to allege additional facts, if they can truthfully be asserted, which might bring their relationship with Southland under the provisions of section 12340.10. As we have already noted, the negligent preparation of an abstract of title may be actionable.

## DISPOSITION

The alternative writ is discharged and a peremptory writ of mandate shall issue. The cause is remanded to the trial court with directions to vacate its order overruling Southland's demurrer to the negligence cause of action and to enter another order sustaining that demurrer with leave to amend.

Klein, P. J., and Hinz, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied September 18, 1991.