# FILED

JUL 22 2016

**NOT FOR PUBLICATION**

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.  CC-15-1117-KiKuF |
| MASSROCK, INC., d/b/a Lenders Assurance, | Bk. No.  2:13-bk-37648-RN |
| Debtor. | |
| RONALD TAXE, Trustee of the TAXE FAMILY TRUST OF 2001, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| DAVID M. GOODRICH, Chapter 7 Trustee, | |
| Appellee. | |

Argued and Submitted on June 23, 2016,
at Pasadena, California

Filed - July 22, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Richard M. Neiter, Bankruptcy Judge, Presiding

Appearances:    Douglas E. Miles argued for appellant Ronald Taxe, Trustee of the Taxe Family Trust of 2001; Joseph Scott Klapach of Klapach & Klapach argued for appellee David M. Goodrich, Chapter 7 Trustee.

Before:   KIRSCHER, KURTZ and FARIS, Bankruptcy Judges.

---

[1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Appellant Ronald Taxe ("Taxe"), trustee of the Taxe Family Trust of 2001 ("Taxe Trust"), appeals an order approving a settlement that resolved a controversy involving disputed deeds of trust encumbering a certain commercial property. Trustee contends that the Taxe Trust lacks standing to appeal the settlement order. We disagree, and we VACATE and REMAND the settlement order because the bankruptcy court did not make any findings for what was called a Rule 9019[2] motion, but also included sale terms implicating § 363.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    Prepetition events**

This case involves a dispute over a commercial real property located on Jefferson Boulevard in Los Angeles (the "Jefferson Property"). In June 2003, certain plaintiffs who had sued Taxe and his wife in state court recorded a notice of attachment against the Jefferson Property. At that time, the record owner of the property was the Taxe Trust.

On or about July 3, 2003, debtor Massrock, Inc. ("Massrock") recorded a deed of trust against the Jefferson Property, securing a $400,000 promissory note. The transaction allegedly involved the sale of certain artwork owned by Massrock to the Taxes in their capacities as co-trustees of the Taxe Trust. Richard Taxe ("Richard"),[3] Taxe's brother, is the President, Secretary and

---

[2]   Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[3]   We refer to Richard Taxe as Richard to avoid any confusion
(continued...)

Chairman of the Board of Massrock.

In November 2004, Taxe had an appraisal prepared for the Jefferson Property, which valued it at $750,000.

On or about January 24, 2006, a deed of trust in favor of DMC, Inc. was recorded against the Jefferson Property, securing repayment of a $250,000 loan made to the Taxes as co-trustees of the Taxe Trust. It was disputed whether the Taxes represented to DMC that the deed of trust was to be a first priority lien encumbering the Jefferson Property and whether DMC knew of the existing Massrock deed of trust, which was still apparently in first position but alleged to have not appeared on the title report obtained by DMC.[4]

In February 2006, DMC assigned its interest in the deed of trust to parties known as Goslins and Sweet ("Goslins/Sweet"). DMC allegedly represented to Goslins/Sweet that the assigned deed of trust was a first priority lien on the Jefferson Property.

On December 21, 2007, the Taxes as co-trustees of the Taxe Trust executed a deed of trust in favor of Dean Gulo against the Jefferson Property, securing repayment of a $235,000 loan made to the Taxes as co-trustees of the Taxe Trust. Days later, Gulo assigned his interest in the note and deed of trust to Lenders Assurance Corporation ("Lenders"), an entity affiliated with Richard and Massrock. The Lenders' deed of trust was recorded on

[3](...continued)
between the parties. No disrespect is intended.

[4] It was also alleged that the Massrock deed of trust was reconveyed and no longer existed when DMC recorded its deed of trust.

-3-

December 28, 2007.

The Taxe Trust eventually defaulted on the note(s), and Massrock began foreclosure proceedings of the Jefferson Property in May 2009, recording a notice of default. Apparently that same month, Goslins/Sweet also recorded a notice of default. On August 7, 2009, Massrock recorded a notice of trustee's sale, stating that the Jefferson Property would be sold on September 1, 2009.

On August 5, 2009, Goslins/Sweet filed a complaint in state court against the Taxes, the Taxe Trust and Massrock concerning the validity and priority of the trust deeds against the Jefferson Property. They also recorded a lis pendens.

In light of the Goslins/Sweet lawsuit and competing foreclosure proceedings, Massrock and Goslins/Sweet agreed that Massrock would not conduct a trustee's sale before November 2, 2009, and in exchange Goslins/Sweet agreed to not record a notice of trustee's sale until after November 2, 2009. Despite the agreement, Goslins/Sweet apparently (and allegedly inadvertently) recorded a notice of trustee's sale on August 24, 2009, for a sale to take place on September 17, 2009.

Massrock went forward with its sale of the Jefferson Property on September 9, 2009, recording its trustee's deed upon sale on September 11, 2009. Massrock obtained the Jefferson Property with a credit bid of $599,791.

The second amended complaint of Goslins/Sweet filed in May 2010 was dismissed in its entirety with prejudice on July 6, 2010. In its ruling, the state court noted that since Massrock had foreclosed on the Jefferson Property in September 2009, Massrock

-4-

was the owner of the Jefferson Property and the junior Goslins/Sweet lien had been extinguished.

Goslins/Sweet appealed and prevailed in part. Following remand, Goslins/Sweet filed a third amended complaint alleging claims for (1) quiet title, (2) imposition and foreclosure of an equitable lien, (3) cancellation of the trustee's deed and reconveyance of the Massrock trust deed, and (4) judicial foreclosure of the Goslins/Sweet deed of trust.

Notwithstanding the Goslins/Sweet lawsuit, the disputed liens and the recorded lis pendens, on October 26, 2012, Massrock recorded a deed of trust in favor of the Rosen Group against the Jefferson Property, securing repayment of a loan for $350,000 to Massrock. Richard allegedly represented to the Rosen Group on behalf of Massrock that the Rosen Group deed of trust would be a first priority lien on the Jefferson Property.

After a bench trial on the Goslins/Sweet third amended complaint, the state court issued its tentative ruling in May 2013. The court ruled, among other things: (1) the Massrock deed of trust failed for lack of consideration and was ordered cancelled; (2) the Goslins/Sweet deed of trust was a valid, first priority lien against the Jefferson Property; (3) the foreclosure sale by Massrock was unwound and the trustee's deed upon sale set aside; and (4) that the Goslins/Sweet deed of trust be foreclosed, the Jefferson Property be sold, and the sale proceeds be applied in payment of the amounts due to Goslins/Sweet.

However, before the state court's tentative ruling became the final statement of decision, Goslins/Sweet, for reasons not evident in the record, moved ex parte on June 17, 2013, for an

order dismissing their cause of action for judicial foreclosure. The application was granted and the judicial foreclosure cause of action was dismissed.

The state court entered a judgment on the remaining claims on July 9, 2013 ("Judgment"). The Judgment cancelled the Massrock deed of trust finding it void ab initio, voided the Massrock foreclosure sale and trustee's deed upon sale, decreed that the Goslins/Sweet deed of trust was a first position lien, and quieted title to the Taxe Trust as of January 26, 2006, subject to the Goslins/Sweet deed of trust.

The Taxes, the Taxe Trust and Massrock appealed the Judgment in October 2013. Defendants argued that the Massrock deed of trust was not void and that it could not be cancelled as a matter of law. Goslins/Sweet were eventually awarded attorney's fees against the Taxes and the Taxe Trust.

Subsequently, Goslins/Sweet recorded a notice of default to foreclose on their $250,000 deed of trust. The trustee's sale of the Jefferson Property was scheduled for November 19, 2013.

**B.    Postpetition events**

One day before the Goslins/Sweet scheduled trustee's sale of the Jefferson Property, Massrock filed a chapter 11 bankruptcy case on November 18, 2013. The case was later converted to chapter 7; David M. Goodrich was appointed as trustee. He successfully moved to stay the pending appeal of the Judgment.

**1.    Trustee's settlement motion**

In January 2015, Trustee, Goslins/Sweet and First American Title Insurance Company (as assignee of the Rosen Group) entered into a Settlement Agreement and General Release ("Settlement

-6-

Agreement"). In the recitals, the Settlement Agreement noted the pending appeal of the Judgment and the parties' controversy involving disputed deeds of trust encumbering the Jefferson Property. The parties executed a mutual release of claims. For Massrock's part, this meant giving up its appeal of the Judgment.

To fund the settlement, the parties agreed to a future sale of the Jefferson Property, with the proceeds to be paid out in the following order: (1) costs of sale; (2) property taxes; (3) $85,000 to Trustee; (4) $250,000 in principal to Goslins/Sweet, plus accrued interest, penalties, foreclosure costs, and $100,000 in attorney's fees (the parties had incurred over $450,000 in attorney's fees to date); (5) $85,000 to First American in full satisfaction of its $350,000 lien against the Jefferson Property; (6) any other valid liens on the Jefferson Property; and (7) the remainder of any net proceeds to the bankruptcy estate. The Settlement Agreement also provided that the sale would be free and clear of the 2007 Lenders' deed of trust, although it does not appear that Lenders, if a separate entity from Massrock, was notified of the settlement or of the loss of its property interest. The proposed opening bid for the Jefferson Property was to be $750,000. However, if it sold for less than $750,000, the carve out paid to Trustee would be reduced to $80,000. Finally, the Settlement Agreement provided that Goslins/Sweet would prepare an application or stipulation to dismiss the appeal of the Judgment by Massrock.

Trustee then moved for approval of the Settlement Agreement under Rule 9019 ("Settlement Motion"). He noted that the proposed settlement recovered at least $80,000 for the estate, and

-7-

depending on the final sale price of the Jefferson Property, potentially much more, without the substantial administrative costs that would accompany a protracted appeal. Trustee contended that the hurdles to recovering property or cash for the estate absent this compromise were substantial. He would be required to prosecute the appeal of the Judgment in light of the state court's findings that: (1) Massrock's deed of trust failed for lack of consideration; (2) even if it had been valid, it had been reconveyed; and (3) Massrock and all others claiming under them after the Goslins/Sweet deed of trust were barred and foreclosed from all rights, claims, interest or equity of redemption in the Jefferson Property. Thus, because of the expense associated with the appeal and Massrock's slim chance of success, Trustee believed it was in the best interest of the estate's creditors to approve the Settlement Agreement. In his supporting declaration, Trustee stated that the proposed settlement was made in good faith, was fair and equitable and, under the circumstances, was reasonable and adequate. Trustee further stated that the settlement was negotiated at arm's length by the parties through their respective counsel.

Taxe, as co-trustee of the Taxe Trust, opposed the Settlement Motion pro se. He contended the Taxe Trust owned the Jefferson Property, not Massrock, based on the Judgment which cancelled Massrock's deed of trust and conclusively determined, prepetition, that Massrock had no interest in the property. Accordingly, argued Taxe, Trustee had no interest in the Jefferson Property to sell. Taxe objected to the sale under § 363. Attached to Taxe's opposition was a copy of a recent preliminary

-8-

title report dated January 8, 2015, which indicated that the Taxe Trust held title and the fee interest in the Jefferson Property.

In reply, Trustee refuted Taxe's argument that the Taxe Trust owned the Jefferson Property. First, Trustee contended that Taxe was judicially estopped from now arguing that Massrock did not own the property, when he had argued in the appeal of the Judgment that the state court erred in ruling Massrock's deed of trust and foreclosure void. Second, Trustee contended that because the Judgment, which Taxe alleged vested title to the Jefferson Property in the Taxe Trust, was not final and unenforceable based on the appeal, Massrock was still record owner of the property. Trustee noted that had Taxe desired to have title to the Jefferson Property vest in the Taxe Trust, he should have allowed the Judgment to become final, but instead he kept the controversy alive by appealing it. Included with Trustee's reply was a request for judicial notice ("RJN"), which contained a copy of the defendants' brief filed in the appeal of the Judgment.

One day before the hearing on the Settlement Motion, Richard, President of Massrock, filed a document stating that neither he nor Taxe were served with copies of Trustee's reply and RJN. In any event, Richard attached what he contended were documents proving that Massrock did not own the Jefferson Property and evidencing Trustee's attempt to "hoodwink" the court. These documents included copies of Massrock's trustee's deed upon sale, the Judgment and the appellate court docket. It is not clear whether the bankruptcy court knew of or reviewed Richard's filing.

**2.    The Settlement Motion hearing and court's ruling**

A hearing on the Settlement Motion proceeded on March 17,

2015. Counsel for Trustee explained that the Settlement Motion was not a sale of the Jefferson Property, but rather only authorized Trustee to sell the property upon a proper § 363 motion to be filed. Counsel noted that the Jefferson Property could sell for as much as $1 million, thereby creating a surplus estate and providing money to the Taxes. Counsel for Goslins/Sweet agreed with the bankruptcy court's observation that if Massrock's foreclosure sale was deemed to be invalid, then title to the Jefferson Property would remain in the Taxe Trust. However, counsel argued that the Judgment, which could have vested title in the Taxe Trust, was not final due to the pending appeal. In any event, the Taxe Trust was free to oppose the future sale motion; the bankruptcy court agreed.

After Taxe made his arguments (Richard spoke on Taxe's behalf due to illness), counsel for Trustee stood up and stated that he was ready for the bankruptcy court's ruling. Hr'g Tr. (Mar. 17, 2015) 28:15-16. Upon that, the court stated, "I've ruled." Id. at 28:17. Seemingly confused, counsel questioned whether the court had in fact made its ruling, to which the court replied, "I thought I had." Id. at 28:20-24. "I approved the settlement."[5] Id. at 29:3.

---

[5] The approval of the Settlement Motion may arise from the court's earlier statement:

> THE COURT: All I'm doing is approving this compromise among the parties who so far – so before you and does not – as Mr. Shinbrot – today is not a motion to sell the property. The Trustee will file a separate motion to sell his right, title and interest in the property. At that time if the Taxe Family Trust claims it has an ownership interest, it can assert it.

Hr'g Tr. (Mar. 17, 2015) 21:2-8.

-10-

Trustee's counsel was ordered to circulate his proposed order approving the Settlement Motion to all parties who appeared before submitting it to the court. Any oppositions to the proposed order were due within one week. Taxe filed an opposition to Trustee's proposed order on March 27, 2015, claiming he was never served with it and discovered that the bankruptcy court had entered it on March 25, 2015. Taxe essentially reargued his opposition to the Settlement Motion, adding that Lenders, which held a deed of trust recorded in 2007, must also be a party to any proposed settlement regarding the Jefferson Property.

On April 30, 2015, the bankruptcy court reentered an order approving the Settlement Motion (the "Settlement Order"). The Settlement Order provided no findings, stating only that the settlement was approved. Taxe timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (K) and (N). We discuss our jurisdiction under 28 U.S.C. § 158 below.

## III. ISSUES

1. Does the Taxe Trust have standing to challenge the Settlement Order?

2. Did the bankruptcy court abuse its discretion in approving the Settlement Motion?

## IV. STANDARDS OF REVIEW

Questions of standing are reviewed de novo. Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869, 879 (9th Cir. 2012).

We review the bankruptcy court's decision to approve a

-11-

settlement for an abuse of discretion. Martin v. Kane (In re A&C Props.), 784 F.2d 1377, 1380 (9th Cir. 1986); Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.), 292 B.R. 415, 420 (9th Cir. BAP 2003). The court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

**A.    Taxe Trust has standing to challenge the Settlement Order.**

Trustee contends that the Taxe Trust lacks standing to challenge the Settlement Order, as it has no right to stop the sale of the Jefferson Property. Notably, Trustee did not dispute standing until now. However, because standing is a jurisdictional requirement and is open to review at all stages of the litigation, we must consider the issue once raised. Nat'l Org. For Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994); Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv., 807 F.3d 1031, 1043 (9th Cir. 2015).

To have standing to appeal a decision of the bankruptcy court, an appellant must show that it is a "person aggrieved" who was directly and adversely affected pecuniarily by an order of the bankruptcy court. Darby v. Zimmerman (In re Popp), 323 B.R. 260, 265 (9th Cir. BAP 2005) (internal quotation marks and citations omitted). A "person aggrieved" is someone whose interest is directly affected by the bankruptcy court's order, either by a diminution in property, an increase in the burdens on the property, or some other detrimental effect on the rights of

-12-

ownership inherent in the property. Id. Thus, the burden is on the Taxe Trust to establish its standing for this appeal. Ctr. for Biological Diversity, 807 F.3d at 1043.

Prior to Massrock's foreclosure of its lien, the Taxe Trust owned the Jefferson Property. After the foreclosure and prior to the Judgment, Massrock held title to the Jefferson Property pursuant to its recorded trustee's deed upon sale. The Judgment, however, voided the foreclosure sale and Massrock's deed upon sale and quieted title in the Taxe Trust, subject to the Goslins/Sweet lien. If the Judgment had not been appealed, title would have once again vested in the Taxe Trust. However, because the Judgment was appealed and still pending at the time of the Settlement Motion, title to the Jefferson Property remained in Massrock; the Taxe Trust could not avail itself of the adjudication to establish its rights in the property. Smith v. Smith, 134 Cal. 117, 119 (1901) (one cannot avail himself of an adjudication establishing a right while the judgment is suspended by an appeal); Nathanson v. Hecker, 99 Cal. App. 4th 1158, 1163 n.1 (2002) (California orders and judgments are not final so long as an appeal is pending). See also Cal. Code Civ. Proc. § 1049 ("An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied.").

The Taxe Trust contends that it has standing to challenge the Settlement Order because it is the current titleholder to the Jefferson Property and a sale would eliminate its ownership rights. The "evidence" the Taxe Trust submitted to show that it

-13-

holds legal title to the Jefferson Property was a preliminary title report from January 2015. However, two problems exist. The title report, by itself, was not admissible evidence, and secondly, under California law, preliminary title reports have very limited, if any, value as to how title to real property is **actually** held:

> Since 1982, the Insurance Code has limited the significance of such preliminary reports. (<u>Southland Title Corp. v. Superior Court</u> (1991) 231 Cal. App. 3d 530, 537, 282 Cal. Rptr. 425; <u>see</u> <u>White v. Western Title Ins. Co.</u> (1985) 40 Cal.3d 870, 884, 221 Cal. Rptr. 509, 710 P.2d 309.) A preliminary title report is an offer "to issue a title policy subject to the stated exceptions set forth" therein. (Ins. Code, § 12340.11.) "The reports are not abstracts of title" and "shall not be construed as, nor constitute, a representation as to the condition of title to real property . . . ." (<u>Ibid.</u>) An "[a]bstract of title" is a written listing of "all recorded conveyances" affecting "the chain of title to the realty property described therein." (Ins. Code, § 12340.10.) The intent of these statutes is to relieve title insurers from liability as title abstractors for the negligent preparation of preliminary title reports. (<u>Cf.</u> <u>Southland Title Corp. v. Superior Court</u>, <u>supra</u>, 231 Cal. App. 3d 530, 537–538, 282 Cal. Rptr. 425.) These statutes do not make such reports meaningless. The reports serve to apprise the prospective insured of the state of title against which the insurer is willing to issue a title insurance policy. (<u>Ibid.</u>)

<u>Alfaro v. Cmty. Hous. Imp. Sys. & Planning Ass'n, Inc.</u>, 171 Cal. App. 4th 1356, 1389 (2009), <u>as modified on denial of reh'g</u> (Mar. 18, 2009).

Nonetheless, the Taxe Trust has standing. Under the Settlement Agreement, the parties agreed that the appeal of the Judgment, at least with respect to Massrock, would be dismissed. That still leaves the Taxe Trust, a nondebtor over which Trustee has no control, a party in the pending appeal. The Taxe Trust could either pursue the appeal against Goslins/Sweet or choose to dismiss it. If the appeal is dismissed or the Judgment is

-14-

affirmed, then title to the Jefferson Property would again vest in the Taxe Trust. And, contrary to Trustee's argument, Goslins/Sweet do not have the absolute right to sell the property; they gave up that right (at least temporarily) once they dismissed their judicial foreclosure cause of action. As for any nonjudicial foreclosure right, the notices issued by Goslins/Sweet in 2013 are stale. They would need to follow California law with proper notice to the owner of the Jefferson Property, which may be the Taxe Trust if the pending state court appeal is dismissed or affirmed. Thus, it appears that the Taxe Trust has at least some interest at stake here; the Settlement Agreement essentially wrote out and ignored any potential interest it may have. This failure to consider any interest by the Taxe Trust would certainly make it an "aggrieved" party.

Although Trustee contends that the Taxe Trust can raise any objections it has to the sale of the Jefferson Property when the § 363 motion is filed, the approved Settlement Agreement already contains many of the sale terms — i.e., price, priority of liens, selling free and clear of Lenders' deed of trust, and distribution rights — and it has essentially determined that Massrock owns the Jefferson Property, without the benefit of an adversary proceeding to conclusively determine the disputed fee interest. In re Popp, 323 B.R. at 268-69. So, it is not apparent what the Taxe Trust would be able to argue once the forthcoming sale motion is filed.

Accordingly, on this record, we conclude that the Taxe Trust has standing to appeal the Settlement Order. Having established our jurisdiction, we now turn to the merits of the appeal.

/ / /

**B.    The bankruptcy court failed to make any findings and conclusions to support approval of the Settlement Motion.**

### 1.    Compromises under Rule 9019

Rule 9019(a) authorizes the bankruptcy court to approve a compromise or settlement upon a motion of the trustee and after a hearing on twenty-one days' notice to all creditors and the U.S. Trustee.  See Rule 2002(a)(3).  Compromises are favored in bankruptcy because they avoid the expenses and burdens associated with litigation.  In re A&C Props., 784 F.2d at 1381.  Therefore, the bankruptcy court has "great latitude" in approving compromises and settlements.  Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988).  Nevertheless, the court may only approve a compromise if it is satisfied that its terms are "fair, reasonable and equitable."  In re A&C Props., 784 F.2d at 1381.

To determine whether a settlement is fair and reasonable, the bankruptcy court must consider:

(a) the probability of success in the litigation;

(b) the difficulties, if any, to be encountered in the matter of collection;

(c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Id.  Trustee, as the party proposing the settlement, had the burden of demonstrating it was fair, reasonable and equitable. Id.

### 2.    Analysis

Trustee contends that the bankruptcy court, "after weighing

-16-

the relevant facts," "properly concluded that the trustee's settlement was 'fair and equitable' to the estate's creditors and would 'be in the best interests of the estate.'" Nothing could be further from the truth.

When opposed, a motion to compromise a controversy under Rule 9019 is subject to the provisions governing contested matters set forth in Rule 9014. 10 Collier on Bankruptcy ¶ 9019.01 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2012). As a contested matter, the bankruptcy court was required to make findings of fact, either orally on the record or in a written decision. See Rule 9014(c) (incorporating Rule 7052, which in turn incorporates Civil Rule 52). The findings must be sufficient to indicate the factual basis for the court's ultimate conclusion. Unt v. Aerospace Corp., 765 F.2d 1440, 1444 (9th Cir. 1985).

"'The findings must be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.'" Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 815 (9th Cir. 2003) (quoting Unt, 765 F.2d at 1444). In the absence of complete findings, we may vacate a judgment and remand to the bankruptcy court to make the required findings. See United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005).

The bankruptcy court did not make any findings, either orally or in the Settlement Order, indicating the factual bases it believed supported each (or any) of the A&C Properties' factors. It failed to even reference A&C Properties or conclude that the settlement was "fair and equitable." When it came time for the

-17-

ruling at the hearing, the court spoke in the past tense, saying that it thought it had approved the settlement. This implies that findings were provided either before or at the hearing. However, careful review of the record and transcript establishes that no such findings were made at anytime during the hearing or in any tentative ruling. Thus, we have no ability to provide any meaningful review.

Given the state of the record, we must conclude that the bankruptcy court erred by failing to make findings evidencing consideration of the A&C Properties' factors. In addition, the Settlement Agreement included sale terms that went beyond a true settlement under Rule 9019 and implicated § 363, for which no findings were made. See In re Mickey Thompson Entm't Grp., Inc., 292 B.R. at 421-22.

We cannot say whether the record would support the requisite findings. The settlement calls for the dismissal of an appeal, even though one of the appellants (Taxe Trust) is not a party to the settlement, and the sale of property which the estate may or may not own. Thus, it is not clear that the settlement can even be implemented. The bankruptcy court should consider in the first instance whether such a settlement is in the best interests of the estate and whether it is appropriate to consider the settlement apart from a proposed sale of the Jefferson Property.

We understand and sympathize with the predicament of the Trustee and the settling parties. The Taxes are willing to go to great lengths to block any sale of the Jefferson Property: according to the superior court, they concocted the Massrock deed of trust, presumably to stymie a creditor's effort to foreclose

-18-

its lien against the property; and they are unashamed to reverse their long-held position that the Massrock deed of trust is valid. Thus, we understand the impulse to "settle around" the Taxes. Further, the Trustee makes a persuasive argument that, if it could be consummated, the settlement transactions would be highly advantageous to the estate. We simply cannot say, however, whether the settlement can be implemented and whether it is in the estate's best interest considering the barriers to its implementation.

Thus, the court abused its discretion in approving the Settlement Motion. As such, we VACATE the Settlement Order and REMAND for further proceedings consistent with this decision.[6]

## VI. CONCLUSION

For the foregoing reasons, we VACATE and REMAND.[7]

---

[6] It seems the better course would be to have all issues heard at once, including the disputed ownership interest of the Jefferson Property.

[7] In support of the Taxe Trust's reply brief, Taxe offered a declaration. Some of what he asserts is already in the record, some is not. Trustee has moved to strike the Taxe declaration. Generally, an appellate court will not consider facts outside the record developed before the trial court. U.S. ex. rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992). Because Taxe seeks to present new testimony on appeal that was not before the bankruptcy court, we GRANT Trustee's motion to strike and will not consider the Taxe declaration. Even if we did consider it, however, it would not change the outcome of this appeal.

-19-