Filed 9/19/23 Certified for Partial Publication 10/10/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| STATE COMPENSATION INSURANCE FUND, | C093897 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2019-80003164-CU-WM-GDS) |
| v. | |
| DEPARTMENT OF INSURANCE et al., | |
| Defendants and Respondents; | |
| A-BRITE BLIND & DRAPERY CLEANING, | |
| Real Party in Interest and Respondent. | |

In 2018, the Insurance Commissioner (Commissioner) found that State Compensation Insurance Fund (State Fund) violated the Insurance Code by miscalculating the workers' compensation insurance policy premiums of A-Brite Blind & Drapery Cleaning (A-Brite). Rather than challenging that ruling by way of a petition for writ of mandate, State Fund entered into a settlement agreement with the Department of

1

Insurance (the Department) to resolve the action. Just a few weeks later, in a separate action involving a *different* insured employer, the Department took official notice of key documents from the *A-Brite* file and gave preclusive effect to the A-Brite decision, actions which State Fund perceived to be a breach of the settlement agreement. In response, State Fund filed a writ petition in the trial court challenging the original decision and order in *A-Brite*. The trial court granted the Department's motion for summary judgment on the ground that the writ was untimely, rejecting State Fund's arguments of equitable estoppel and equitable tolling.

Although we disagree with the trial court's interpretation of the settlement agreement, we conclude the grant of summary judgment was nonetheless proper and therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

State Fund is a public enterprise fund established under the California Insurance Code. (Ins. Code, § 11770 et seq.) It is authorized to sell and provide workers' compensation insurance to California employers. In 2017, A-Brite initiated an action with the Department's administrative hearing bureau against State Fund regarding State Fund's policy premiums. Following an evidentiary hearing, an administrative law judge (ALJ) issued a proposed decision to the Commissioner, who declined to adopt it. Instead, the Commissioner issued his own decision and order on November 16, 2018 (the "A-Brite order"), finding that State Fund violated the Insurance Code by, among other things, including an unlawful rating tier modifier during the 2015 and 2016 policy periods. The Commissioner further designated the A-Brite order as precedential under Government Code section 11425.60, subdivision (b). State Fund filed a motion for reconsideration, which was deemed denied when the Commissioner failed to respond.

On January 28, 2019, more than a month before the deadline for State Fund to challenge the A-Brite order in the trial court by petition for writ of mandate (Cal. Code Regs., tit. 10, § 2509.76, subd. (a)), State Fund's general counsel sent a letter to the

2

Department, asking the Commissioner to "rescind the designation of the [A-Brite] Decision as precedential," as the decision contained "clear errors of facts and law." The letter stated that, due to the precedential designation, an attorney in another administrative matter had already contacted State Fund, demanding State Fund immediately suspend the use of its tier modifier. State Fund also cautioned that the precedential designation "exposes insurers to unwarranted litigation by faulting one insurer for the Department's choice to approve the confidential filing of a tier algorithm." In response to the letter, the Department's attorney, Bryant Henley, contacted State Fund to discuss settlement. State Fund and the Department ultimately signed a settlement agreement containing, in pertinent part, the following terms:

"2. Resolution of the Dispute. The A-Brite order applies to A-Brite Blind & Drapery Cleaning, and State Fund agrees to be bound by the terms of the A-Brite Order as those terms relate to the obligations between State Fund and A-Brite. State Fund agrees, further, not to file a Writ Petition challenging, in whole or in part, the A-Brite Order. The Department agrees to remove the precedential designation from the A-Brite Order, rendering the decision non-precedential. As a result of this Agreement, the Parties agree the A-Brite Order may not be 'relied on as precedent' within the meaning of Government Code section 11425.60, subdivision (a) in any other action by the Department relating to State Fund's rating plan and premium discount modifier." (Unnecessary capitalization omitted.)

The agreement also included language stating that the contract was fully integrated.

On February 6, 2019, the Commissioner signed the settlement agreement and issued an order rescinding the precedential designation of the A-Brite order. On March 15, 2019, State Fund's deadline for filing a writ petition challenging the A-Brite order expired.

3

Ten days later, after noting "several legal and factual issues in common" between the *A-Brite* matter and another administrative action brought against State Fund, an ALJ for the Department took official notice of the A-Brite order, the A-Brite settlement agreement, and various other A-Brite documents in *In the Matter of the Appeal of Sessions Payroll Management, Inc.* (File: AHB-WCA-18-47, July 18, 2019) (the *Sessions* matter). The ALJ also ordered the parties to brief whether the "doctrines of exhaustion of judicial remedies and collateral estoppel preclude relitigation of factual and/or legal issues decided by the Commissioner in *A-Brite.*" (Fn. omitted.)

In response, State Fund argued that judicial exhaustion did not apply because the settlement agreement eliminated the A-Brite order's preclusive effect, and argued collateral estoppel was inapplicable due to public policy considerations and because the issues in the two matters were not identical. The ALJ disagreed with State Fund, instead adopting Sessions's position that both doctrines applied and issuing an order finding that State Fund was precluded from relitigating the factual and legal issues decided in *A-Brite*. State Fund filed a petition for reconsideration, which the ALJ denied on May 31, 2019.

On June 10, 2019, State Fund filed a petition for a peremptory writ of administrative mandate challenging the merits of the 2018 A-Brite order. Aware that the petition was filed after the limitations period had run, State Fund alleged that equitable estoppel and equitable tolling applied to render the petition timely. Specifically, State Fund alleged that Henley, the Department's attorney, conveyed the message that signing the settlement agreement would have the same effect as a victory on a writ petition. It further alleged that the Commissioner intentionally misled State Fund by representing that the settlement agreement would preclude *any* use of the A-Brite order in subsequent proceedings. State Fund alleged it reasonably relied on the Commissioner's representations, and thus entered into the settlement and did not challenge the A-Brite order within the designated statutory period. State Fund allegedly did not learn of the Department's "deception" until three months later, when the Department breached the

4

settlement agreement through its ALJ, who gave preclusive effect to the A-Brite order in the *Sessions* matter.

On November 19, 2020, in response to State Fund's effort to reopen the *A-Brite* matter by filing this writ, the ALJ in *Sessions* issued an order vacating its ruling finding the A-Brite order preclusive in that case, as the A-Brite order was no longer final for purposes of collateral estoppel and judicial exhaustion.

The same day, the Department filed a motion for summary judgment in the trial court, arguing that State Fund's petition was time-barred as a matter of law. The court granted the motion, finding that neither equitable estoppel nor equitable tolling applied to extend the period of limitations. In doing so, it found that the settlement agreement only required the Department to "de-designate" the A-Brite order as precedent under the applicable Government Code section, and it did not preclude the Department from binding State Fund to the A-Brite order through other means, such as nonmutual offensive collateral estoppel. State Fund appeals.

DISCUSSION

State Fund argues the trial court erred by granting summary judgment on the ground that the writ was time-barred, as there is a triable issue of material fact as to whether equitable estoppel or equitable tolling apply, which would render the writ timely. We disagree.

I

*Legal Standard*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476; see also Code Civ.

5

Proc., § 437c, subd. (c).)[1]  A defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; see also § 437c, subd. (p)(2).)  The defendant "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar, supra*, at p. 850.)  Once the defendant meets its initial burden, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact. (*Id*. at pp. 849-850.)

In addition, "[w]hile resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112; see *NBCUniversal Media, LLC v. Superior Court* (2014) 225 Cal.App.4th 1222, 1231 [summary judgment proper where uncontradicted facts show statute of limitations has run].)  On appeal, we review the trial court's decision de novo and view the evidence in a light favorable to State Fund as the losing party. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768-769.)

II

*Statute of Limitations*

A.   *State Fund's writ petition*

There is no dispute that State Fund's writ petition is untimely on its face.  State Fund petitioned for writ of mandate under section 1094.5. (Cal. Code Regs., tit. 10, § 2509.76.)  It was required to file the petition within 90 days from the last day that reconsideration could be granted in the *A-Brite* matter. (Cal. Code Regs., tit. 10, § 2509.76, subd. (a).)  Here, the last day the Commissioner could order reconsideration

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

6

was December 16, 2018.  (Cal. Code Regs., tit. 10, § 2509.72.)  Thus, State Fund had until March 15, 2019, to file a petition, but did not do so until June 10, 2019.

B.     *The settlement agreement*

State Fund's contentions that equitable estoppel or equitable tolling apply rest on its interpretation of the settlement agreement.  State Fund argues that it reasonably understood the settlement to prohibit the Department from using the A-Brite order as precedent against State Fund in any other action, including through the application of collateral estoppel.  Thus, State Fund asserts that it was misled into inaction—not challenging the writ—until the Department breached the agreement by applying the A-Brite order in *Sessions*.  The Department counters that it did not breach the agreement, which simply required that it de-designate the A-Brite order as precedential under Government Code section 11425.60, but left open the option of binding State Fund to the A-Brite order in future actions with other parties through collateral estoppel.[2]  We accordingly first consider the parties' dueling interpretations of the agreement.

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and

---

[2]     We note that the ALJ in *Sessions* also found the doctrine of judicial exhaustion required application of the A-Brite order in that matter.  Judicial exhaustion provides that "unless a party to a quasi-judicial proceeding challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions."  (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 69-70, fn. omitted.)  However, as our Supreme Court has explained, exhaustion of judicial remedies is based on the doctrines of res judicata and collateral estoppel.  (*Runyon v. Board of Trustees of California State University* (2010) 48 Cal.4th 760, 773-774; see also *Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 241 ["[t]he underpinnings of this rule of exhaustion of judicial remedies . . . are buried in the doctrine of res judicata or that portion of it known as collateral estoppel and more recently as issue preclusion"].)  Thus, for purposes of this analysis, we find no need to discuss judicial exhaustion as a concept distinct from collateral estoppel, particularly because no party has addressed judicial exhaustion in their briefs.

7

lawful." (Civ. Code, § 1636.)  When a contract is reduced to writing, this intent is determined from the writing alone, if possible.  (*Cedars-Sinai Medical Center v. Shewry* (2006) 137 Cal.App.4th 964, 979.)  Judicial interpretation is controlled by the clear and explicit meaning of the contract provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage.  (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608.)  " 'Interpretation of a contract "must be fair and reasonable, not leading to absurd conclusions.  [Citation.]" ' [Citation.]"  (*Bill Signs Trucking, LLC v. Signs Family Limited Partnership* (2007) 157 Cal.App.4th 1515, 1521.)  " 'The court "must avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable." [Citation.]' [Citation.]"  (*Barroso v. Ocwen Loan Servicing, LLC* (2012) 208 Cal.App.4th 1001, 1012-1013.)

Here, the plain language of the contract controls, and does not support the narrow reading advanced by the Department.[3]  The agreement's stated purpose is to address the parties' disagreement as to whether the A-Brite order "was properly decided based upon the record and applicable law."  To resolve this dispute, State Fund agreed that it would not file a writ challenging the A-Brite order and further agreed that the order would "appl[y] to A-Brite" and that State Fund would "be bound by the terms of the A-Brite Order *as those terms relate to the obligations between State Fund and A-Brite*."  (Italics added & unnecessary capitalization omitted.)  Thus, State Fund agreed to be bound by the order with respect to A-Brite.  It did not agree to be bound by the A-Brite order with respect to any other party.

---

[3]     State Fund argues both that (1) the contractual language is clear and prohibits the Department from binding State Fund to the A-Brite order in other actions and, alternatively, (2) the term "non-precedential" is ambiguous and the parol evidence supports a finding of ambiguity sufficient to defeat summary judgment.  As we find the language of the contract unambiguous, we do not address State Fund's argument that the trial court should have considered parol evidence regarding the Department and State Fund's pre- and post-agreement conduct.

To achieve this outcome, the agreement required the Department to "remove the precedential designation from the A-Brite order, rendering the decision non-precedential." (Unnecessary capitalization omitted.)  More specifically, the parties agreed that "the A-Brite Order may not be 'relied on as precedent' within the meaning of Government Code section 11425.60, subdivision (a) in any other action by the Department relating to State Fund's rating plan and premium discount modifier." (Unnecessary capitalization omitted.)  Government Code section 11425.60 permits an agency to designate a decision as precedential if the decision "contains a significant legal or policy determination of general application that is likely to recur." (Gov. Code, § 11425.60, subd. (b).)  Subdivision (a) provides that a decision "may not be expressly relied on as precedent unless it is designated as a precedent decision by the agency." (Gov. Code, § 11425.60, subd. (a).)  Thus, a precedential designation, much like a published appellate decision, permits reliance on that decision in other actions involving other parties, whether or not State Fund is involved.

The Department asserts that this contractual language (1) allows reliance on the A-Brite order to bind State Fund through collateral estoppel in future actions in the Department, but (2) prohibits reliance on the A-Brite order as precedent to bind other insurers in future actions in the Department.  Taking the Department's position to its logical conclusion, the sole purpose (and result) of rendering the A-Brite order nonprecedential was to protect *other* insurers from the conclusions of law in the A-Brite order.  State Fund, however, would still be bound to the A-Brite order whenever the same legal or factual issues regarding State Fund's premium and rate calculations arose with another insured party.  In other words, the Department's interpretation suggests that State Fund agreed not to pursue the writ, while also agreeing to be bound by the A-Brite order with respect to every company raising the same issues in all future administrative actions against State Fund.  This reading of the agreement would render the contract largely illusory, granting no benefit to State Fund.  Such an interpretation would contravene the

9

general principle of contract interpretation requiring that we "must interpret the provisions of a contract to avoid rendering the instrument 'illusory.' " (*John's Grill, Inc. v. The Hartford Financial Services Group, Inc.* (2022) 86 Cal.App.5th 1195, 1219, review granted Mar. 29, 2023, S278481.)

The contractual language supports State Fund's interpretation. Indeed, if the agreement only prohibited the Department from relying on the A-Brite order as precedent in cases involving *other* insurers, as the Department contends, the agreement would simply state that "the A-Brite Order may not be 'relied on as precedent' within the meaning of Government Code section 11425.60, subdivision (a)." However, the parties chose to add an additional clause thereafter. The additional language specifies that the A-Brite order may not be relied on as precedent within the meaning of Government Code section 11425.60, subdivision (a) "in any other action by the Department relating to *State Fund's* rating plan and premium discount modifier." (Italics added.)

We cannot read the integrated contract in a manner that renders this language superfluous. "Courts must interpret contractual language in a manner which gives force and effect to *every* provision, and not in a way which renders some clauses nugatory, inoperative or meaningless. [Citations.]" (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 473, original italics.) Here, this clause plainly states that the Department may not rely on the A-Brite order in other actions relating to "*State Fund's* rating plan and premium discount modifier." (Italics added.) By specifically referencing actions relating to State Fund's insurance policies, the agreement indicates that it is meant to prohibit reliance on the A-Brite order in other actions *involving State Fund.* Clearly, other insurers would not be involved in an action related to "State Fund's rating plan and premium discount modifier"; the action would be related to the insurer's own policies. For those insurers, de-designation prohibits the Department from applying the legal analysis underlying the A-Brite order to their own

10

policies.  For State Fund, the additional clause ensures that the A-Brite order cannot bind State Fund, factually or legally, in other actions involving State Fund's policies.**4**

C.  *Equitable estoppel and equitable tolling*

While we agree with State Fund's interpretation of the settlement agreement, we conclude that State Fund fails to raise a question of material fact as to whether equitable estoppel or equitable tolling applies in this case.  Thus, we will affirm the trial court's judgment.  (*Union Pacific Railroad Co. Santa Fe Pacific Pipelines, Inc.* (2014) 231 Cal.App.4th 134, 182 ["We review the correctness of the judgment, not the reasoning or grounds assigned for the ruling, and will affirm a judgment correct on any theory"].)**5**

1.  *Equitable estoppel*

A defendant may be estopped from asserting the statute of limitations as a defense if four elements are present:  " ' "(1) the party to be estopped must be apprised of the

---

**4**     Though we need not resolve the issue through this appeal, we question whether the application of nonmutual offensive collateral estoppel in the *Sessions* matter—regardless of the agreement's terms—was legally correct.  State Fund " 'is at once both an agency of the state and an insurance carrier.' " (*California Attorneys, etc. v. Brown* (2011) 195 Cal.App.4th 119, 124; see also Ins. Code, § 11873, subd. (a) [referring to State Fund as an agency].)  The United States Supreme Court has prohibited the application of nonmutual offensive collateral estoppel against government agencies in such a way as to preclude relitigation of issues, such as those involved in this case.  (*U.S. v. Mendoza* (1984) 464 U.S. 154, 162 [78 L.Ed.2d 379, 386].)  Two California appellate courts have also stated, without analysis, that this rule applies in California as well.  (*Helene Curtis, Inc. v. Assessment Appeals Bd*. (1999) 76 Cal.App.4th 124, 133 ["nonmutual collateral estoppel does not apply against the government as a way to preclude relitigation of issues . . . ."]; *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 172, fn. 9.)  We note that the ALJ in the *Sessions* matter did not address this caselaw in its ruling binding State Fund to the A-Brite order through the doctrines of judicial exhaustion and collateral estoppel.

**5**     State Fund also challenges the trial court's rulings sustaining five of the Department's evidentiary objections in connection with the motion for summary judgment.  We find no error with the trial court's rulings, which properly excluded immaterial parol evidence and evidence of A-Brite's rate filings, neither of which are relevant to the analysis of the Department's summary judgment motion.

11

facts; (2) he [or she] must intend that his [or her] conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he [or she] must rely upon the conduct to his [or her] injury." ' " (*Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 37, quoting *City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 489.)

"In the statute of limitations context, equitable estoppel may be appropriate where the defendant's act or omission actually and reasonably induced the plaintiff to refrain from filing a timely suit. [Citation.] The requisite act or omission must involve a misrepresentation or nondisclosure of a material *fact* bearing on the necessity of bringing a timely suit. [Citation.]" (*Doe v. Marten* (2020) 49 Cal.App.5th 1022, 1028, original italics.) "The estopped party must either misrepresent or conceal material facts with knowledge of the true facts (or gross negligence as to them) and with the intent that another who is ignorant of the facts will rely on the misrepresentation or concealment." (*Jordan v. City of Sacramento* (2007) 148 Cal.App.4th 1487, 1496.) Application of the doctrine is justified only if the "facts clearly establish that a grave injustice would be done if an equitable estoppel were not applied." (*Cal. Cigarette Concessions, Inc. v. City of L. A.* (1960) 53 Cal.2d 865, 869.)

Here, the doctrine is inapplicable to the facts before us. There is no misrepresentation, or nondisclosure of facts, which caused State Fund to refrain from filing the writ. Rather, the parties entered into a settlement agreement and eventually disagreed about its interpretation when a dispute arose. While State Fund urges us to consider what the parties discussed before entering into the settlement, this is not relevant where, as here, the unambiguous words of the settlement fully reflect the terms of the parties' agreement. In other words, the only relevant representations by the Department are found in the contract. State Fund likewise points to no concealment of facts, or misrepresentation, within the agreement that would support the application of equitable estoppel. That the parties ultimately disagreed about the meaning of the words does not

12

mean that the terms constituted a misrepresentation. In sum, we perceive no grave injustice to State Fund by declining to apply equitable estoppel and instead enforcing the statute of limitations in this case. (*Davis v. Physician Assistant Bd.* (2021) 66 Cal.App.5th 227, 266 [equitable estoppel applies against governmental body only in unusual instances when necessary to avoid grave injustice and when result will not defeat strong public policy].)

### 2. *Equitable tolling*

Similarly, State Fund does not raise a question of material fact as to whether equitable tolling applies. "The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine" that, where applicable, will " 'suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.' " (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99 (*McDonald*).) "[E]quitable tolling today applies when three 'elements' are present: '[(1)] timely notice, and [(2)] lack of prejudice, to the defendant, and [(3)] reasonable and good faith conduct on the part of the plaintiff.' [Citation.] These requirements are designed to 'balanc[e] . . . the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the [operative] limitations statute.' " (*Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 724-725.) "[E]quitable tolling is a narrow remedy that applies to toll statutes of limitations only 'occasionally and in special situations.' " (*Id.* at p. 724.) It is not a "cure-all for an entirely common state of affairs." (*Wallace v. Kato* (2007) 549 U.S. 384, 396 [166 L.Ed.2d 973, 985].)

State Fund argues that equitable tolling applies because it reasonably and in good faith pursued one legal remedy (settlement), which tolled the statute of limitations on an alternative legal remedy (a writ petition). To support its argument, State Fund cites numerous cases applying equitable tolling where the plaintiff reasonably and in good

13

faith sought relief through one avenue, but when that avenue proved unsuccessful, the plaintiff filed suit as an alternative path to relief.

It is true that, "[b]roadly speaking, the [equitable tolling] doctrine applies ' "[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one." ' " (*McDonald, supra*, 45 Cal.4th at p. 100.) However, the cases applying equitable tolling in this circumstance are distinguishable, as the plaintiffs in those cases pursued, *but ultimately failed* to obtain, the initial remedy, causing them to seek relief in court as an alternative path. (See, e.g., *Elkins v. Derby* (1974) 12 Cal.3d 410, 412-413, 420 [equitable tolling during period where the plaintiff unsuccessfully pursued workers' compensation claim]; *Forman v. Chicago Title Ins. Co.* (1995) 32 Cal.App.4th 998, 1001-1002 [period where the defendant insurance company investigated and ultimately denied the plaintiff's claim was equitably tolled]; *Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674, 693 [equitable tolling between time that the plaintiff notified insurer of damages until coverage denied]; *Addison v. State of California* (1978) 21 Cal.3d 313, 317, 321 [equitable tolling where the plaintiff first filed a lawsuit in federal court, which was dismissed, and sought relief in state court thereafter]; *McDonald*, at pp. 104-105 [equitable tolling during time period the plaintiff sought relief through the defendant's internal grievance procedure, which did not resolve in the plaintiff's favor].)

In contrast to the above referenced cases, State Fund engaged in settlement negotiations and actually obtained the remedy it sought by entering into the settlement agreement. We find this distinction meaningful. Specifically, given that the parties resolved the *A-Brite* matter to State Fund's satisfaction, justice would not be promoted by permitting State Fund to set aside the settlement agreement and reopen proceedings in a time-barred action. (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 770 [equitable tolling is applied only in rare circumstances, when necessary to promote fairness and justice].)

14

Indeed, we have construed the settlement agreement consistent with State Fund's interpretation. Pursuant to its terms, State Fund agreed that it would not challenge the merits of the A-Brite order. While the Department eventually sought to enforce the A-Brite order against State Fund in the *Sessions* matter using collateral estoppel, we conclude here that the settlement prohibited the Department from doing so. To then apply equitable tolling would endorse the parties' mutual breaches of the settlement, such that State Fund could challenge the merits of a settled decision, in contravention of the parties' binding agreement. This is not a just result for State Fund or the Department. It also would conflict with the important public policy of promoting settlement by forcing the breach of a settlement agreement to permit litigation of an expired action. (*Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 745.) Further, applying equitable tolling would prejudice A-Brite, which would be dragged back to court to litigate a decision over four years after it was decided.[6] However, State Fund is not necessarily without further remedy. It still may challenge the ALJ's application of collateral estoppel in *Sessions* if that order is reinstated.

### III

#### *Motions to Compel and Supplement the Administrative Record*

State Fund argues that the trial court abused its discretion by denying its motion to compel depositions of the Commissioner, Henley, and the Department's person most qualified (PMQ) regarding their state of mind and intent behind the settlement agreement. State Fund also argues the trial court erred by denying its motions to augment the record. To the extent these orders are appealable under section 906, as intermediate rulings affecting the judgment, we find no abuse of discretion.

---

[6] A-Brite filed a responsive brief arguing that equitable estoppel does not apply and asserting that State Fund's proper avenue for relief is to challenge the order in the *Sessions* matter.

15

In administrative mandamus proceedings, review in the trial court is typically limited to the administrative record before the agency and may not consider extra-record evidence. (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 565.) However, there is a limited exception "[w]here the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at the hearing before respondent, it may . . . admit the evidence at the hearing on the writ . . . ." (§ 1094.5, subd. (e).) The party seeking evidence must show that the evidence is relevant. (*Pomona Valley Hospital Medical Center v. Superior Court* (1997) 55 Cal.App.4th 93, 102.) "[D]iscovery under section 1094.5, unlike general civil discovery, cannot be used to go on a fishing expedition looking for unknown facts to support speculative theories." (*Ibid*.) Discovery orders are reviewed for an abuse of discretion. (*People ex rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1071.)

Here, State Fund has failed to show that the trial court abused its discretion by denying State Fund's motion to compel. First, " 'agency heads and other top governmental executives are not subject to deposition absent compelling reasons.' " (*Contractors' State License Bd. v. Superior Court* (2018) 23 Cal.App.5th 125, 131.) Ricardo Lara is the Commissioner. Henley, at the time of the motion to compel, was a deputy commissioner and special counsel to the Commissioner. Thus, both are subject to this general rule. (See *id*. at pp. 130-131 [board's secretary and chief executive officer not subject to deposition].) It is true that, as an exception to the rule, top government officials may be compelled to appear for depositions where the moving party shows (1) the official has " 'direct personal factual information pertaining to material issues in an action,' " and (2) the information cannot be gained through any other sources. (*Nagle v. Superior Court* (1994) 28 Cal.App.4th 1465, 1468.) However, State Fund made no showing below, and does not argue on appeal, that the information it sought from the Commissioner and from Henley could not be obtained through other sources. Indeed,

16

State Fund served notices of deposition on these top government officials before serving any other discovery. Thus, the trial court did not abuse its discretion in finding State Fund failed to meet its burden.

With respect to the PMQ, the trial court was within its discretion to find the testimony sought was not relevant. State Fund moved to depose the PMQ on a broad array of issues such as State Fund's rate filings, the Department's processes and procedures for reviewing rate filings, the A-Brite and *Sessions* matters, and the Commissioner's oversight. State Fund has failed to show why this wide-ranging discovery on the merits of the underlying A-Brite matter and the processes of the Department are relevant. Accordingly, we find no error in the trial court's ruling.

The trial court was similarly within its discretion to deny State Fund's motions to augment the administrative record. Again, the trial court generally may not consider evidence outside the record of the proceedings before the agency (§ 1094.5, subd. (e); *Toyota of Visalia, Inc. v. New Motor Vehicle Bd*. (1987) 188 Cal.App.3d 872, 881), and any supplemental evidence must be relevant. (*Western States Petroleum Assn. v. Superior Court, supra*, 9 Cal.4th at p. 570.)

State Fund sought to augment the administrative record with evidence to controvert the Commissioner's evidence in support of the Department's summary judgment motion. The trial court did not err in finding the motion premature, as a procedurally improper effort to circumvent the rules of admissibility regarding summary judgment motions. Instead, the trial court acted within the bounds of reason by directing State Fund to submit such evidence in opposition to the motion for summary judgment, where it could rule on any evidentiary objections raised by the Department before admitting it into the record. (*Dunn v. County of Santa Barbara* (2006) 135 Cal.App.4th 1281, 1292 [party in writ proceeding may submit extra-record evidence in connection with summary judgment motion].) State Fund also sought to augment the record with evidence of its rate filings. However, it has failed to show that this evidence is relevant

17

or that it was improperly excluded.  (§ 1094.5, subd. (e).)  Thus we find no abuse of discretion.

## DISPOSITION

The judgment is affirmed.  Each party shall bear its own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


                                                    /s/
                                        Krause, Acting P. J.


We concur:


        /s/
Boulware Eurie, J.


        /s/
Mesiwala, J.

18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| STATE COMPENSATION INSURANCE FUND,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DEPARTMENT OF INSURANCE et al.,<br><br>Defendants and Respondents;<br><br>A-BRITE BLIND & DRAPERY CLEANING,<br><br>Real Party in Interest and Respondent. | C093897<br><br>(Super. Ct. No. 34-2019-80003164-CU-WM-GDS)<br><br>ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION |

APPEAL from a judgment of the Superior Court of Sacramento County, Steven M. Gevercer, Judge. Affirmed.

Anthony Lewis, Noah Graff, Rhett R. Johnson, and Seaton Tsai for Plaintiff and Appellant.

Rob Bonta, Attorney General, Tamar Pachter, Assistant Attorney General, Molly K. Mosley, Craig D. Rust, Debbie J. Vorous, and Michael Sapoznikow, Deputy Attorneys General, for Defendants and Respondents.

Roxborough, Pomerance, Nye & Adreani, Drew E. Pomerance, and David R. Ginsburg, for Real Party in Interest and Respondent.

1

THE COURT:

The opinion in the above entitled matter filed on September 19, 2023, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports, with the exception of part III, and it is so ordered.[1]

BY THE COURT:

_____/s/_____
Krause, Acting P. J.

_____/s/_____
Boulware Eurie, J.

_____/s/_____
Mesiwala, J.

---

[1]     See California Rules of Court, rules 8.1105 and 8.1110.

2